**LOGISTICS PERSONNEL CORP., Plaintiff,**

v.

**TRUCK DRIVERS LOCAL UNION NO. 299, affiliated with the International Brotherhood of Teamsters, Defendant.**

No. Civ. Action 97–40366.

United States District Court,
E.D. Michigan,
Southern Division.

May 22, 1998.

Mark A. Hypnar, Hayduk, Andrews, Detroit, MI, for Plaintiff.

Matthew S. Broderick, Wayne County Neighborhood Legal Services, Highland Park, MI, for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff, Logistics Personnel Corp., brought the instant action seeking to vacate a July 25, 1997 Arbitrator's Opinion and Award. Defendant has also filed a counterclaim seeking to enforce the arbitrator's award. Before the court are cross-motions for summary judgment pursuant to Fed. R.Civ.P. 56. For the reasons set forth below, this court will grant plaintiff's motion and deny defendant's motion.

### Factual Background

Plaintiff leases truck drivers to a variety of customers throughout the country. Defendant, Truck Drivers Local Union No. 299, represents a number of truck drivers, including Timothy Lieckfelt, an employee of plaintiff. At all times relevant to this case, Lieckfelt was assigned to haul steel products in multi-ton tractor-trailers for Ryerson Steel, a customer of plaintiff.

Plaintiff and defendant are also parties to a collective bargaining agreement which provides, in part, that "[i]t shall be grounds for immediate termination of employment pursuant to any substance abuse test, if an employee in a safety critical position tests positive." On May 4, 1994, Lieckfelt tested positive for cocaine pursuant to a random drug screen. He was discharged from his employment, but reinstated after he completed a rehabilitation program. On August 26, 1996, Lieckfelt was again selected for a random drug screen. He again tested positive for cocaine, and plaintiff again terminated his employment.

On September 6, 1996, Lieckfelt filed a grievance over his discharge. Lieckfelt's primary contention was that plaintiff did not observe the required procedures in conducting the August 26, 1996 drug test. On May 1, 1997, the parties submitted the grievance to arbitration pursuant to the collective bargaining agreement. The arbitrator rendered his decision on July 25, 1997. The arbitrator concluded that, despite some irregularities, a valid sample of Lieckfelt's urine was taken at the drug testing site. The arbitrator also concluded that it was clear under the labor agreements in this case that Lieckfelt was employed in a safety critical position. However, the arbitrator also found that plaintiff had not met its burden to provide evidence to establish that the positive result was properly obtained. Specifically, the arbitrator noted that plaintiff produced no evidence regarding the chain of custody of the urine sample at the laboratory and no specific report detailing the quantity of the drugs found

in Lieckfelt's sample. The arbitrator interpreted the labor agreements in this case as requiring the employer to submit specific reports from the laboratory in the event that an employee files a grievance in order to allow the employee to adequately contest any findings. In this case, plaintiff submitted only a one page form with a single notation indicating that Lieckfelt had tested positive for cocaine. Accordingly, the arbitrator ordered that Lieckfelt be reinstated in his position, along with full back pay, seniority and benefits.

Plaintiff refused to reinstate Lieckfelt. On September 12, 1997, plaintiff filed the instant action seeking to vacate the arbitrator's award. Subsequently, defendant filed a counterclaim asking this court to enforce the arbitrator's award. Plaintiff filed its motion for summary judgment on January 20, 1998. Defendant filed its motion for summary judgment on March 5, 1998.

## Discussion

### 1. Motion for summary judgment pursuant to Rule 56

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission*, 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* 822 F.2d at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration*, 14 F.3d 1143, 1148 (6th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland*, 988 F.2d 649 (6th Cir. 1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be

sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701, 1991 WL 49687 (6th Cir.1991).

### 2. Scope of review of an arbitrator's award

■ The parties agree that this court's role in reviewing the arbitration award in this case is extremely limited. As the United States Supreme Court has explained:

> Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. ... [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 37–38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *see also Monroe Auto Equip. Co. v. International Union,* 981 F.2d 261, 266 (6th Cir.1992). Therefore, a reviewing court's task is "limited to determining whether the arbitrator's construction of the collective bargaining agreement is to any extent plausible." *Exxon Corp. v. Esso Workers' Union, Inc.,* 118 F.3d 841, 844 (1st Cir. 1997) (citing *Misco,* 484 U.S. at 36–38, 108 S.Ct. 364).

■ However, the Supreme Court has also held that an arbitration award "is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *United Steelworkers v. Enterprise Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). An arbitrator's decision flouts this standard when:

1. It conflicts with express terms of the collective bargaining agreement.

2. It imposes additional requirements that are not expressly provided in the agreement;

3. It is without rational support or cannot be rationally derived from the terms of the agreement; or

4. It is based on considerations of fairness and equity instead of the precise terms of the agreement.

*Cement Divisions, National Gypsum Co. v. United Steelworkers,* 793 F.2d 759, 766 (6th Cir.1986) (citations omitted).

■ One additional factor this court must consider is public policy. Collective bargaining agreements are merely a form of contract, and it is well-settled that courts must refrain from enforcing contracts that are contrary to public policy. Accordingly, if enforcing an arbitration award would violate some public policy, a court must refrain from doing so. *See W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers,* 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983); *Exxon,* 118 F.3d at 844–45.

### 3. Analysis

#### a. Plaintiff's motion for summary judgment

■ In its motion for summary judgment, plaintiff makes essentially two arguments. First, plaintiff contends that enforcing the arbitrator's award and reinstating Lieckfelt in this case would violate the public policy of prohibiting persons under the influence of drugs from performing safety critical jobs. As the First Circuit held in *Exxon,* "[j]udicial decisions, agency regulations, and legislative enactments combine to form a solid phalanx of positive law evidencing a well defined and dominant public policy against the performance of safety-sensitive tasks while under the influence of drugs." *Exxon,* 118 F.3d at 849. It is also clear on the record before this court that Lieckfelt's tasks, namely hauling multiple tons of steel through densely populated urban areas, were safety-sensitive. Plaintiff asserts that it is undisputed that Lieckfelt's drug test result was positive for cocaine. Plaintiff argues that reinstating Lieckfelt, a proven drug user, in a safety-sensitive job, would be contrary to an established public policy. Accordingly, plaintiff urges this court to vacate the arbitrator's award.

Second, plaintiff contends that the arbitrator exceeded his authority. The collective bargaining agreement provides that a positive drug test is grounds for immediate termination of an employee in a safety critical position. Again, plaintiff contends that it is undisputed that the result of the drug test was positive. Accordingly, plaintiff argues that when the arbitrator reinstated Lieckfelt, he violated a specific provision of the collective bargaining agreement. Moreover, plaintiff contends that the arbitrator imposed additional requirements not a part of the collective bargaining agreement when he required plaintiff to introduce laboratory chain of custody evidence as well as the evidence of the quantity of cocaine found in Lieckfelt's system. Accordingly, plaintiff contends that the arbitrator's award exceeds the bounds of the arbitrator's authority under the collective bargaining agreement.

In response, defendant asserts that both arguments submitted by plaintiff in support of its motion for summary judgment presuppose that the positive drug test result was *valid.* If the test result was invalid, then Lieckfelt is not necessarily a person who operates in a safety sensitive job under the influence of drugs. As result, plaintiff would be unable to rely on the public policy rationale in arguing that this court should vacate the arbitrator's award. Moreover, without the assumption that the test result is valid, plaintiff is unable to establish that the arbitrator exceeded his authority under the collective bargaining agreement. Defendant points out that the arbitrator specifically took issue with the proposition that the test results were valid in this case. The arbitrator indicated that plaintiff had not carried its burden of proving that the results were properly obtained. Specifically, the arbitrator determined that there was not sufficient proof that Lieckfelt's urine sample was handled properly at the testing laboratory, and there was not sufficient evidence of the quantity of drugs found in his system.

The arbitrator's decision was based primarily on the specific language of the National Master Freight Agreement ("NMFA"), which is incorporated into the collective bargaining agreement. The NMFA discusses the proper procedures for drug testing, and provides:

"If each container is received undamaged at the laboratory, properly sealed, labeled and initialed, consistent with DOT regulations as certified by the laboratory, the employer may take disciplinary action based upon *properly obtained laboratory results.*"

(Pl. comp., Exh. F at 31(emphasis added).) The arbitrator interpreted this language as requiring plaintiff to produce evidence that the laboratory results were properly obtained even though plaintiff proved that the sample was properly sealed, labeled and initialed. Specifically, the arbitrator pointed to the following language in the NMFA: "'When a grievance is filed as a result of a positive drug test, the Employer shall obtain the test results from the laboratory relating to the drug test, and shall provide a copy to the Union.'" (Pl. comp., Exh. F at 32.) The arbitrator went on to note that, "[i]n that regard, the phrase 'test results from the laboratory' appears to include the full chain of custody, including laboratory chain of custody, and reports of quantitation from the laboratory . . . ." *Id.* However, because this court finds that these additional requirements are not consistent with the terms of the collective bargaining agreement or the applicable Department of Transportation regulations in this case, this court finds that the arbitrator has exceeded his authority.

First, to require plaintiff to produce evidence regarding the chain of custody for the time subsequent to the point at which the specimen reached the laboratory is inconsistent with the terms of the NMFA. The NMFA includes a detailed section concerning "Chain of Custody Procedures," and the arbitrator cited the relevant portions of that section at page 13 of the award. (*See* Pl. comp., Exh. F at 13.) The provisions of that section deal exclusively with procedures *at the testing site* in the presence of the employee being tested. The last portion of that section cited by the arbitrator, upon which the arbitrator relied so heavily in reaching his decision in this case, provides:

The parties recognize that the key to chain of custody integrity is the immediate seal-

ing and labeling of the specimen in the presence of the tested employee. If each container is received undamaged at the laboratory, properly sealed, labeled and initialed, consistent with DOT regulations as certified by the laboratory, the employer may take disciplinary action based upon *properly obtained laboratory results.*

*Id.* (emphasis added). The NMFA then goes on to discuss the "Laboratory Requirements" and "Laboratory Testing Methodology," neither of which are concerned with chain of custody issues. It is clear to this court that the language requiring laboratory results to be "properly obtained" refers to the "Laboratory Requirements" and "Laboratory Testing Methodology" and not to "Chain of Custody" requirements. Pursuant to the NMFA, the Medical Review Officer ("MRO") is vested with the authority to review and interpret all drug test results in accordance with DOT regulations to ensure compliance with the laboratory testing requirements set forth under the NMFA. Under the terms of the DOT regulations, the MRO has the responsibility to certify that the laboratory results were properly obtained and processed. *See* 49 C.F.R. § 40.33(a)(3). The MRO in this case, Dr. Kagan, did so certify. Accordingly, it was error for the arbitrator to impose the additional requirement that plaintiff submit proofs regarding the laboratory chain of custody based on the language requiring laboratory results to be "properly obtained."

▉ In addition, this court finds that the arbitrator also erred in requiring the plaintiff to submit reports of quantitation. Article 42 of the collective bargaining agreement clearly provides that "[i]t shall be grounds for immediate termination of employment pursuant to *any* substance abuse test, if an employee in a safety critical position tests positive." (Pl. comp., Exh. A at 48.) There is no mention of quantity anywhere in this provision. Accordingly, the only relevant question, under the collective bargaining agreement, is whether the employee in the safety critical position tested positive. If so, regardless of the quantity, the employer has grounds to terminate that employee. Therefore, contrary to the position taken by the arbitrator, there is no reason to believe that the phrase "test results from the laboratory" specifically requires a report of quantitation.

Moreover, the DOT regulations provide that "the MRO *may* reveal the quantitation of a positive test result to the employer, the employee, or the decision maker in a lawsuit, grievance or other proceeding initiated by or on behalf of the employee and arising from a verified positive test result." 49 C.F.R. § 40.29(g)(3). This permissive language suggests that specific reports of quantitation are not mandatory.

Accordingly, because this court finds that the arbitrator imposed additional requirements on the parties and contradicted the specific terms of the collective bargaining agreement, this court finds that the award of the arbitrator should be overturned. Therefore, this court will grant plaintiff's motion for summary judgment.

#### b. Defendant's motion for summary judgment

Defendant's motion for summary judgment essentially reiterates the arguments raised in defendant's response to plaintiff's motion for summary judgment. Defendant asks this court to dismiss plaintiff's complaint, and further, to grant summary judgment in favor of defendant on its counterclaim and enter an order confirming the award of the arbitrator. For the reasons set forth above, this court will deny defendant's motion.

### Conclusion

Accordingly, this court having reviewed the submissions of the parties, and being fully advised in the premises,

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment pursuant to Fed.R.Civ.P. 56 is **GRANTED.**

**IT IS FURTHER ORDERED** that the July 25, 1997 Arbitrator's Opinion and Award of Arbitrator Stanley T. Dobry is **VACATED.**

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56 is **DENIED.**

**IT IS FURTHER ORDERED** that defendant's counterclaim is **DISMISSED with prejudice.**

**SO ORDERED.**