820 F.2d 238
 Derick G. JUSTICE, Roy Redmond, and Shane B. Wellington,
Plaintiffs, Cross-Appellees,
v.
TOWN OF BLACKWELL and Jennie Henkel, Defendants-Third Party
Plaintiffs-Appellees, Cross-Appellants,
v.
Kevin B. CRONIN, Counsel, State of Wisconsin Election Board,
Third-Party Defendant-Appellant.
 Nos. 86-2878, 86-3031 and 87-1246.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 25, 1987.
Decided May 29, 1987.
 
 Charles D. Hoornstra, Dept. of Justice, Madison, Wis., for appellant.
 Jeffrey R. Myer, DeCarvalho & Myer, Milwaukee, Wis., for appellee.
 Before CUMMINGS and WOOD, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 ESCHBACH, Senior Circuit Judge.
 
 
 1
 In the district court the named plaintiffs and the class they represent presented claims for injunctive relief and monetary damages under the Civil Rights Act, 42 U.S.C. Sec. 1983, and the Voting Rights Act of 1965, 42 U.S.C. Sec. 1973 et seq. In the instant two appeals, each purporting to be an interlocutory appeal under Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), we are involved with both substantive and jurisdictional issues. In appeal No. 86-2878, the third-party defendant Cronin appeals the order of the district court denying Cronin's motion to dismiss the third-party complaint on grounds of qualified immunity. In appeal No. 86-3031, the Town of Blackwell and Jennie Henkel, defendants, seek to appeal the order of the district court denying their motion to amend their answer to the plaintiffs' complaint. The proposed amended answer sought to raise on behalf of Henkel the defense of qualified immunity approximately 14 months after the initial answer was filed.
 
 
 2
 When we heard oral argument on February 25, 1987, we had been advised that the trial was set to commence March 19, 1987. Subsequent to the filing of the primary briefs on appeal, third-party defendant Cronin filed with this court a "Motion for Stay and to Reassign Judge" and petitions for "Writs of Mandamus and Prohibition or other Supervisory Relief." The Town and Henkel joined these motions after filing. Because the trial was imminent we issued an order following oral argument containing our rulings in this case on February 26, 1987, 812 F.2d 1410. Briefly stated, we reversed the order of the district court denying the motion to dismiss of the third-party defendant-appellant and directed the district court to grant the motion and dismiss Cronin. We dismissed the cross-appeal of the defendants, third-party plaintiffs, Town of Blackwell and Jennie Henkel for lack of appellate jurisdiction. The petitions for writs of mandamus and prohibition were denied. The request for reassignment of the trial judge was denied. The motion to compel answers to interrogatories filed by third-party defendant Cronin was denied as moot. We stayed the proceedings below to permit the district judge to rule on the motion to compel discovery filed by the defendants and the motion for protective order filed by plaintiffs. In that order we provided that a written opinion would follow. This is that opinion.
 
 
 3
 * In the 1980 census the Town of Blackwell, Wisconsin, had a population of 384, including 87 Blacks. Of the total population 241 were residents of the Blackwell Job Corps Center, a federally-operated work program. This number included 80 of the 87 Blacks reflected in the 1980 Blackwell census. The plaintiffs filed this action purporting to represent themselves and a class consisting of Blackwell Job Corps Center members who were denied their right to vote either because they were Black or because they were job corps members. The plaintiffs contended in their complaint that at a Blackwell polling place on November 6, 1984, they were asked by the defendant Henkel whether they intended to reside in Blackwell in the future. Those who did not answer in the affirmative were considered non-residents and ineligible to vote. Some apparently were not permitted to vote at all, while others were permitted to vote only in the presidential election. The plaintiffs assert that this action of Henkel and other Blackwell election officials violated the laws of Wisconsin, the 14th and 15th Amendments to the United States Constitution, the Civil Rights Act and the Voting Rights Act.
 
 
 4
 The Town and Henkel filed a third-party complaint against Cronin, an attorney for the State Election Board, wherein they alleged that Cronin advised a member of the Town Election Board that any person who indicated to election officials that he did not consider himself a resident of Wisconsin was ineligible to vote and should not receive a ballot. The third-party complaint further alleged that Blackwell election officials, acting upon this advice, refused to permit certain members of plaintiffs' class to vote. While the third-party complaint also named Nicolet National Forest as a defendant by reason of the fact that it administers the Job Corps Center at Blackwell, Nicolet was subsequently dismissed and there is no issue raised in the present appeals regarding that dismissal.
 
 II
 
 5
 We are required first to consider our own appellate jurisdiction of both appeals. In Mitchell the Supreme Court held, under the collateral order doctrine, that a "district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. Sec. 1291." 105 S.Ct. at 2817.
 
 
 6
 In the third-party complaint the Town and Henkel seek only damages from Cronin and thus Cronin contends upholding his defense of qualified immunity would permit his dismissal from the litigation. However, the plaintiffs seek both injunctive relief and monetary damages against the Town and Henkel. Mitchell left open the question whether the denial of qualified immunity in a case where both injunctive and monetary relief is sought is still appealable as an interlocutory matter since in such a case granting qualified immunity to the individual defendant would usually still require that defendant to stand trial on the claim for equitable relief. The Circuits that have addressed this question appear to be split. However, in this Circuit we recently held that the ruling to deny qualified immunity under such circumstances is appealable. Scott v. Lacy, 811 F.2d 1153 (7th Cir.1987). However, this determination within our Circuit is insufficient to save jurisdiction of Henkel's appeal. Her appeal arises not from the denial of a claim of qualified immunity but from the denial of a motion to amend the answer to include the defense of qualified immunity. Here the district court did not address the merits of that defense. Apparently the district court denied the motion to amend because of the lengthy delay between the filing of the defendant's answer and the motion to amend. We doubt that such a ruling fits within the contours of Mitchell, but even if by virtue of unusual circumstance we were to conclude that it did, we would still dismiss Henkel's appeal. It is quite conceivable that there are cases where the delay of 14 months could be justified by reason of continuing discovery, changed circumstances or other unforeseeable matters. This is not such a case. The district court was presented with nothing that would constitute even an arguably reasonable basis for the delay. Even if we accepted jurisdiction of defendant's appeal, we could find no reason to hold that the ruling denying the motion to amend the answer was an abuse of discretion.
 
 III
 
 7
 While the plaintiffs have filed no claim against the third-party defendant Cronin, they nevertheless contend on appeal that appellate jurisdiction to consider his defense to the third-party complaint does not exist because Cronin may be liable to the Town and Henkel under state law claims. Thus plaintiffs reason that since upholding his defense would not relieve him from the burden of defending the state law claims in the third-party complaint, he should not be dismissed. While the issue is not precisely the same, we rejected the general rationale of such an approach in Scott and do so here. Additionally, we reject this contention since the only basis for continuing subject matter jurisdiction over Cronin would be pendent party jurisdiction. Undeniably there are cases where pendent party jurisdiction may preserve an action as to the state claims even though the federal civil rights claim has been dismissed. We need not call the roll on these situations because none is applicable here. Where qualified immunity gives Cronin the right not to stand trial on the federal claims, the statutes conferring jurisdiction on the court will not be construed to thwart that policy and bring him back into the case on state law claims under the circumstances of this case. Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). Moore v. Marketplace Restaurant, Inc., 754 F.2d 1336 (7th Cir.1985).[1]
 
 IV
 
 8
 It is now clear beyond debate that Harlow qualified immunity is available only to government officials sued in their individual capacity. Where the suit is against the named party in his official capacity, the suit is one against the government that employs him. The third-party complaint in this case alleged that Cronin provided advice to the Blackwell election official in his capacity as an attorney for the state election board. However, the third-party complaint did not assert whether Cronin was being sued in his individual or official capacity. All parties have proceeded as though the suit is one against Cronin only in his individual capacity. The Town and Henkel seek only damages, not injunctive relief, from Cronin. At no point in this court or in the lower court has the Town or Henkel argued that the claim against Cronin is brought against him in his official capacity. Whether this position results from the third-party plaintiffs' assumption regarding the impact of the 11th Amendment, we need not consider.
 
 
 9
 The plaintiffs seek recovery from the Town and Henkel on four possible theories, two under section 1983 and two under the Voting Rights Act. The Town and Henkel seek recovery from Cronin if they are liable to plaintiffs. The Town and Henkel concede that Cronin is not liable under the first theory; we will conclude that because Cronin did not violate clearly established law making him liable under any of the other three possible theories, he is entitled to qualified immunity.
 
 
 10
 The two possible violations under section 1983 are that the plaintiffs were not permitted to vote because they were not residents of Wisconsin or because they were Black. As to the first, the Town and Henkel concede that Cronin's advice did not conflict with constitutional law; Wisconsin need not permit non-residents to vote. As regards to racial discrimination, there is no hint of racial animus in the alleged actions of Cronin and the Town does not allege that he had any racial motivation. He simply advised a member of the Town's Elections Board that anyone who stated to election officials that he did not consider himself a Wisconsin resident was ineligible to vote. Even if[2] this advice was in some manner misinterpreted and used by others as a means to deliberately deny Blacks the vote because they were Black, Cronin is not liable under section 1983 under these circumstances and a fortiori did not violate clearly established federal law. See Ustrak v. Fairman, 781 F.2d 573, 575 (7th Cir.) ("Although the warden approved the punishment of Ustrak, there is no evidence that he did so for racial reasons. This ought to end the matter, for no doctrine of superiors' liability is recognized in section 1983 cases."), cert. denied, --- U.S. ----, 107 S.Ct. 95, 93 L.Ed.2d 47 (1986).
 
 
 11
 Two sections of the Voting Rights Act are at issue in this case, 42 U.S.C. Sec. 1973(a) and Sec. 1973aa-1(c). We must first express doubt whether a state official can be liable in his individual capacity for violating either; we are aware of no authority for such a proposition. Sec. 1973(a), in particular, applies by its terms only to a "State or political subdivision." Sec. 1973aa-1(c) is phrased in the passive, thus failing to list those to whose actions it applies. It would make sense to read it together with other parts of the Act to apply only to a State or political subdivision. A closely related question is, if there is individual liability, whether Harlow qualified immunity would apply. We do not reach these questions because, accepting the allegations of the third-party complaint as true, Cronin did not violate the Voting Rights Act.
 
 
 12
 Sec. 1973aa-1(c) provides that no citizen who is otherwise qualified to vote in a presidential election shall be denied the vote because of failure to comply with a state durational residency requirement. Cronin's advice is devoid of reference to any durational residency requirement and thus not inconsistent with the section. A person need not have been living in Wisconsin for any given period of time to consider himself a Wisconsin resident under the advice Cronin allegedly gave.
 
 
 13
 Sec. 1973(a) essentially enacts the Fifteenth Amendment's mandate that no state abridge the right to vote because of race, making it applicable also to political subdivisions.[3] Sec. 1973(b) provides a "results test", providing that a violation of Sec. 1973(a) is established if "the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of [a protected group, such as Blacks]." Cronin's advice is not such as to make the political processes less open to Blacks. A state can prevent non-residents from voting. If all non-residents were prevented from voting, as he advised, there would be no adverse effect on the eligible voters of any group.
 
 
 14
 Finally, the Town and Henkel contend that Cronin forfeited his qualified immunity by violating clearly established Wisconsin election law, Wis.Stats. Sec. 6.92 et seq. In Wisconsin, when a voter is challenged as to residence, he is to be placed under oath and asked whether he intends to make his home in the ward in which he is seeking to vote. If notwithstanding the answer given, the vote is still challenged, the voter may take an oath that, among other things, he is a resident of the ward. He may then submit a ballot under challenge which is retained separately from unchallenged ballots. The fact that Cronin's advice did not include all of the implementing details under the Wisconsin statutes is plainly insufficient to permit a finding that Cronin violated clearly established Wisconsin election laws.
 
 
 15
 We do not mean to imply in so stating that had Cronin violated a Wisconsin election law, under the facts of this case, it would have constituted a violation of clearly established federal law. Cronin would forfeit his qualified immunity for liability under federal law by violating state law only if the violation of state law provided the basis for the federal cause of action. Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 3020 n. 12, 82 L.Ed.2d 139 (1984). We need not and do not address that issue in this case.
 
 V
 
 16
 For the reasons stated, pursuant to the order issued in this case by this court on February 26, 1987, the cross-appeal of defendants and third-party plaintiffs Town of Blackwell and Jennie Henkel is dismissed for lack of appellate jurisdiction and the district court's denial of third-party defendant Kevin B. Cronin's motion to dismiss is REVERSED and REMANDED with instructions to dismiss him. Costs are taxed to defendants, third-party plaintiffs Town of Blackwell and Jennie Henkel.
 
 
 
 [1]
 We note also that there is a question whether this sort of claim fits the limits of federal jurisdiction. In order for pendent party jurisdiction to exist under Article III, the pendent claims must be considered part of the same "case" as the federal claim. Here, Cronin's liability, if any, is derivative; only if the Town and Henkel are liable to plaintiffs would Cronin have to contribute. See Bernstein, 738 F.2d 179, 188 ("The two claims are of course related, but they are related sequentially ...")
 
 
 [2]
 We express no opinion as to whether the Town and Henkel did in fact violate any of the laws asserted
 
 
 [3]
 42 U.S.C. Sec. 1973(a) reads, in extenso: No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, as provided in subsection (b) of this section