**Anibal L. TABOAS, Plaintiff–Appellee,**

v.

**Bernard J. MLYNCZAK, et al., Defendants–Appellants.**

**Nos. 97–3592, 97–3601 and 97–3615.**

United States Court of Appeals, Seventh Circuit.

Argued April 23, 1998.

Decided July 6, 1998.

Angela Imbierowicz (argued), Hinsdale IL, for Plaintiff–Appellee.

Irene M. Solet (argued), Department of Justice, Civil Div., Appellate Section, Washington, DC, David P. Schippers, schippers & Bailey, Chicago, IL, for Defendant–Appellant in No. 97–3592.

Irene M. Solet (argued), Department of Justice, Civil Div., Appellate Section, Washington, DC, Thomas P. Walsh, Carole J. Ryczek, Office of the U.S. Atty., Civil Div., Chicago, IL, Barbara L. Herwig, Department of Justice, Civil Div., Appellate Section, Washington, DC, for Defendant–Appellant in No. 97–3601.

Irene M. Solet (argued), Department of Justice, Civil Div., Appellate Section, Washington, DC, Fred T. Myers, Geneva, IL, for Defendants–Appellants in No. 97–3615.

Before BAUER, FLAUM, and EVANS, Circuit Judges.

FLAUM, Circuit Judge.

Pursuant to provisions of the Westfall Act, see 28 U.S.C. § 2679, the United States moved to substitute itself as the sole defendant in a defamation suit brought by Anibal Taboas against nine federal employees. The

district court denied the motion for substitution, holding that the defendant employees were not acting within the scope of their employment when they made the allegedly defamatory statements. We reverse the district court's decision and remand for further proceedings.

## I.

Anibal Taboas was a manager in the Department of Energy's field office in Argonne, Illinois from 1987 to 1995. Eight employees in the Argonne office filed individual and class discrimination grievances against Taboas in 1995, alleging that Taboas had favored minority candidates in hiring and promotion decisions and had favored female candidates with whom he had a personal or sexual relationship. Shortly after filing their grievances, the employees became dissatisfied with the handling of their case. Their case counselor reportedly informed them that Cherri Langenfeld, Taboas's supervisor, refused to take action against Taboas for fear of provoking a lawsuit.

The employees then sent a letter to the case counselor's supervisor, a DOE official based in Golden, Colorado, to complain about the lack of response to their concerns. This letter also conveyed the employees' fears that Taboas would retaliate against them, perhaps violently, because of their grievances. The letter described several alleged incidents of erratic behavior by Taboas, including faking a suicide at a party attended by DOE employees; carrying an M–16 assault rifle, which he had fraudulently obtained from the Argonne armory, around the office; and displaying a large hunting knife

while at work. The Colorado supervisor referred the matter back to Langenfeld in the Chicago Operations Office, who declined to act on the employees' concerns because of a lack of supporting evidence. The employees initiated a separate grievance against Langenfeld, and they also brought the matter to the attention of then–Secretary Hazel O'Leary of the Department of Energy and two Illinois congressmen.

The DOE commissioned a contractor to evaluate the likelihood that Taboas would engage in violent reprisals. The contractor, a forensic psychologist, concluded that the employees' concerns were baseless. According to his report, the employees had relied on unsubstantiated hearsay and not first-hand knowledge, and much of their information had been fed to them by a disgruntled security employee, Edward McCallum, who had worked in the Argonne facility with Taboas before being transferred to Washington, DC.

Taboas sued the eight employees from the Argonne office, as well as Edward McCallum, in Illinois state court. The complaint alleged defamation, tortious interference with his employment relationship, and other state-law claims. Pursuant to the Westfall Act, the United States certified that the nine defendants were acting within the scope of their employment and moved to substitute itself as the sole defendant.[1] The parties consented to the referral of the case to a magistrate judge, who denied the motion to substitute on the grounds that the defendants were not acting within the scope of their employment. According to the magistrate judge, the defendants acted solely in

1. The Westfall Act, officially known as the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.L. No. 100–694, 102 Stat. 4563 (1988), amended several provisions of the Federal Tort Claims Act to extend immunity to federal employees from liability for tortious conduct occurring within the scope of employment. When a tort action is brought against a federal employee, the Attorney General may certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1). This "scope certification" by the Attorney General serves to substitute the United States as the sole defendant, id. § 2679(d)(1), and, if the suit was filed in state court, the case is

removed to federal court, id. § 2679(d)(2). Since the action against the United States is the plaintiff's exclusive remedy, id. § 2679(b)(1), substitution of the United States as the sole defendant serves to immunize the defendant employee from liability. See, e.g., Ezekiel v. Michel, 66 F.3d 894, 897 n. 5 (7th Cir.1995). The plaintiff may challenge the substitution of the United States as the sole defendant, however, by contesting the scope certification and arguing that the employee defendant was not acting within the scope of employment at the time the tortious conduct occurred. See Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995).

their own interests, as demonstrated by their attempt to circumvent the established chain of command in bringing their complaints before Secretary O'Leary and the two congressmen. The United States appeals from the denial of the motion.[2]

## II.

■ Taboas contends that we lack jurisdiction over this appeal because the denial of the motion for substitution is not a final order.[3] We have taken jurisdiction of such an appeal in the past, however, *see Snodgrass v. Jones*, 957 F.2d 482 (7th Cir.1992), and we now join our sister circuits in making explicit what we implied in Snodgrass: A denial of the United States' motion for substitution under the Westfall Act is immediately appealable under the collateral order doctrine. *See Flohr v. Mackovjak*, 84 F.3d 386, 390 (11th Cir.1996); *Kimbro v. Velten*, 30 F.3d 1501, 1503 (D.C.Cir.1994), *cert. denied*, 515 U.S. 1145, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995); *Jamison v. Wiley*, 14 F.3d 222, 230–31 & n. 10 (4th Cir.1994); *Aliota v. Graham*, 984 F.2d 1350, 1353–54 (3d Cir.), *cert. denied*, 510 U.S. 817, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993); *Pelletier v. Federal Home Loan Bank*, 968 F.2d 865, 873 (9th Cir.1992); *McHugh v. University of Vermont*, 966 F.2d 67, 69 (2d Cir.1992). As these decisions explain, the denial of the United States' motion for substitution in this context is effectively a denial of immunity for the defendant employee, *see also Ezekiel v. Michel*, 66 F.3d 894, 897 n. 5 (7th Cir.1995) (noting that the Westfall Act confers absolute immunity on federal employees who commit torts while acting within the scope of their employment), and the collateral order doctrine therefore applies with as much force in this context as it does to other claims of qualified or absolute immunity. *See, e.g.,*

*Mitchell v. Forsyth*, 472 U.S. 511, 528–30, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (holding that the denial of a motion for summary judgment is an immediately appealable collateral order where the defendant was a public official asserting qualified immunity).

■ Furthermore, since substitution effectively confers immunity, the same limitations on appealability that apply to a denial of qualified or absolute immunity also apply to a denial of a motion for substitution. *Johnson v. Jones*, 515 U.S. 304, 319–20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), held that the collateral order doctrine does not permit an immediate appeal of a district court's denial of qualified immunity when the court's summary judgment order rests on a determination that there are genuine issues of fact requiring a trial. *See also Behrens v. Pelletier*, 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) ("[D]eterminations of evidentiary sufficiency at summary judgment are not immediately appealable ... if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred...."); *Clash v. Beatty*, 77 F.3d 1045 (7th Cir.1996). Taboas argues, and the Government concedes, that the same principles should apply to the district court's denial of the motion for substitution in this case. If the district court's order rests on the existence of disputed factual issues, rather than on issues of law, then the collateral order doctrine does not permit an immediate appeal from that decision.

In this case, the magistrate judge did not identify or rely on disputed issues of fact in denying the motion for substitution.

---

2. Prior to filing this appeal, the United States moved the district court to reconsider its denial of substitution. The magistrate judge denied this motion with respect to eight of the defendants but granted the motion with respect to Defendant McCallum. Thus, the proceedings regarding Defendant McCallum are not involved in this appeal.

3. Taboas also argues that we lack jurisdiction because the individual defendants filed their notices of appeal more than 30 days after the denial of the motion for substitution. The 30–day period for filing an appeal did not begin to run, however, until the district court rejected the United States' timely motion to reconsider the denial of substitution, *see* Fed. R.App. P. 4(a)(4), and the notices of appeal were filed within 30 days of that decision.

Rather, the order relied on the "unrebutted exhibit evidence presented by plaintiff" in concluding that, as a matter of law, "the plaintiff has met his burden of showing that the defendants' conduct was outside the scope of employment." The magistrate judge reached this conclusion based on the fact that the defendants had made their complaints, contrary to the established policy of the Department, outside of the proper chain of command. Taboas argues that there is a genuine factual dispute regarding the defendants' states of mind in making the alleged defamatory statements, and he contends that this disputed factual issue prevents us from taking jurisdiction over this appeal. The magistrate judge's order made no finding regarding malice, however, and it did not rely on the defendants' subjective states of mind in denying the substitution motion. Johnson does not authorize an appellee to defeat appellate jurisdiction under the collateral order doctrine by asserting the existence of factual disputes that are never identified, or relied upon, by the district court in denying the defendant's claim of immunity as a matter of law. See *Johnson*, 515 U.S. at 319–20, 115 S.Ct. 2151; see also *Behrens*, 516 U.S. at 313, 116 S.Ct. 834 ("*Johnson* reaffirmed that summary-judgment determinations are appealable when they resolve a dispute concerning an abstract issue of law relating to qualified immunity ....") (quotation and alterations omitted). The order denying substitution in this case rested on a legal conclusion that the unrebutted evidence sufficed to demonstrate that the defendants acted outside the scope of their employment. We therefore have jurisdiction over this appeal under the collateral order doctrine.

■ The parties also dispute the appropriate standard of review on appeal. In *Snod-*

*grass*, we stated that the district court's determination that the defendant acted outside the scope of his employment was subject to *de novo* review. *Snodgrass v. Jones*, 957 F.2d 482, 484 (7th Cir.1992). That was the correct standard in *Snodgrass* because there were no disputed facts and the appeal presented only legal issues. *Id.* But because motions for substitution may arise in various procedural postures, which in turn present different considerations for the district court, some further elaboration of the appropriate standard of appellate review is in order.

■ As noted, substitution of the United States as the exclusive defendant under the Westfall Act confers immunity on the defendant employee. In requesting immunity through substitution, the movant[4] has the same procedural options as a defendant asserting other forms of immunity, such as an absolute or qualified immunity defense. An immunity defense is typically asserted in one of two ways. Immunity may be raised in a motion to dismiss, in which case the district court accepts as true all factual allegations in the complaint and decides whether immunity attaches as a matter of law. Alternatively, an immunity defense may be raised in a motion for summary judgment, in which case the district court ascertains whether any genuine issue of material fact exists and, if there is none, decides whether judgment is warranted as a matter of law.

■ These same avenues are available in requests for immunity under the Westfall Act. A motion for substitution may be decided on the face of the complaint (akin to a motion to dismiss) when the movant contends that, even accepting the allegations of the complaint as true, the defendant acted within the scope of employment. See *McHugh v. University of Vermont*, 966 F.2d 67, 74–75 (2d Cir.1992) (reviewing *de novo* the district court's certification of scope of employment and "assum[ing] that plaintiff's allegations are true for purposes of this proceeding").

---

4. When the Attorney General certifies that the employee acted within the scope of employment, the United States moves for substitution. *See* 28 U.S.C. § 2679(d)(1). When the Attorney General declines to certify, the defendant employee may petition the court for a scope certification and substitution of the United States as the defendant. *See id.* § 2679(d)(3).

In the alternative, the motion for substitution may be decided by reference to affidavits and other evidence outside the pleadings (akin to a summary judgment motion) if the movant contests the facts as pled and the plaintiff is unable to demonstrate that a genuine issue of material fact exists with respect to scope of employment. *See Maron v. United States*, 126 F.3d 317, 322 (4th Cir.1997) (approving the district court's statement that the substitution motion "constitutes, in effect, a motion for summary judgment and challenges the plaintiff to come forward with an evidentiary showing"); *Melo v. Hafer*, 13 F.3d 736, 746 (3d Cir.1994) ("[T]he court may grant substitution if the plaintiff fails to come forward with competent evidence of the alleged conduct."); *cf. Wood v. United States*, 995 F.2d 1122, 1129 (1st Cir.1993) (en banc) (allowing the Attorney General, in granting a scope certificate, "to dispute characterizations of the [alleged tortious] incident and subsidiary immunity-related facts," but forbidding the certificate from denying that any incident occurred at all). When the motion for substitution follows either the motion to dismiss model or the summary judgment model, our standard of appellate review is *de novo*, just as in any motion to dismiss or summary judgment case. *See Snodgrass*, 957 F.2d at 484.

The more difficult question is how to proceed when the motion for substitution contests the facts pled in the complaint, as in a motion for summary judgment, and the summary judgment papers reveal disputed factual issues. In such a case, the district court may hold an evidentiary hearing to resolve material factual disputes related to the scope of employment.[5] Resolution of factual disputes in preliminary scope-of-employment proceedings is a significant departure from typical summary judgment practice, in which

"a trial court's function is to ascertain whether disputed facts exist, not to try them." *Melo,* 13 F.3d at 746 (quoting *McSurely v. McClellan*, 697 F.2d 309, 321 (D.C.Cir.1982)). It is generally recognized that such evidentiary hearings are permissible under the Westfall Act, *see Jamison v. Wiley*, 14 F.3d 222, 236 (4th Cir.1994) (collecting cases), although there is a dispute among the circuits regarding the appropriate range of issues that may be decided in such a hearing. Compare *Wood*, 995 F.2d at 1126 (allowing an evidentiary hearing into ancillary facts relating to scope of employment but not a hearing into whether the alleged tortious act actually occurred), *and McHugh*, 966 F.2d at 74 (same), *with Heuton v. Anderson*, 75 F.3d 357, 361 (8th Cir.1996) (rejecting *Wood* and allowing evidentiary hearings into all disputed facts related to scope of employment, including whether the incident occurred at all); *Kimbro v. Velten*, 30 F.3d 1501, 1507–09 (D.C.Cir.1994) (same), *cert. denied*, 515 U.S. 1145, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995); *and Melo*, 13 F.3d at 746–47 (same). Although the range of issues that may be decided at the evidentiary hearing remains a debated question, there seems to be agreement that when the district court resolves factual disputes in such a hearing, those factual findings should be reviewed for clear error on appeal. *See Maron*, 126 F.3d at 326 n. 8.

In the instant case, the debate surrounding evidentiary hearings under the Westfall Act is not an issue, for the magistrate judge proceeded along the traditional summary judgment model and was not required to resolve any factual disputes. The magistrate judge noted the parties' agreement "that the motion could be decided on the papers filed," and he went on to make an independent determination "that the motion is, in fact, decidable on those papers." The magistrate

---

**5.** We note that when the district court resolves factual disputes relating to scope of employment in an evidentiary hearing, the restrictions on immediate appealability imposed by *Johnson v. Jones*, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), would not be a factor. *Johnson* held that no immediate appeal may be taken when a district court denies qualified immunity because of the existence of factual disputes requiring trial; if the district court holds an evidentiary hearing under the Westfall Act and resolves any such factual disputes, *Johnson* does not apply.

judge looked to "the motion and memorandums filed with respect to the motion, ... the exhibits attached to plaintiff's opposition memorandum ... [and] plaintiff's first amended verified complaint (and exhibits)," and the court based its decision to deny the motion on "the unrebutted exhibit evidence presented by plaintiff." The magistrate judge conducted a typical summary judgment proceeding, and, as in any summary judgment case, our standard of review is de novo.

### III.

With these preliminary issues now resolved, we turn to the merits of the district court's denial of the motion for substitution. Whether the defendants' action fell within the scope of employment is decided under state law, see Snodgrass, 957 F.2d at 484, and the plaintiff bears the burden of demonstrating that the Attorney General's scope certification was erroneous, see id. at 487 n. 3.

Under Illinois law, "[n]o precise definition has been accorded the term 'scope of employment,' but broad criteria have been enunciated." Pyne v. Witmer, 129 Ill.2d 351, 135 Ill.Dec. 557, 543 N.E.2d 1304, 1308 (1989) (quotation and citation omitted). An employee's action falls within the scope of employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master." Id. (citing Restatement (Second) of Agency § 228 (1958)). Applying these criteria to the case at hand, we conclude that the employees, in raising concerns about possible retaliation by their supervisor, acted within their scope of employment.

Bringing a supervisor's perceived misfeasance to the attention of his superiors is among the duties that an employee may reasonably be expected to perform. See Bue-

chele v. St. Mary's Hosp. Decatur, 156 Ill. App.3d 637, 109 Ill.Dec. 83, 509 N.E.2d 744, 746 (1987) (holding that respondeat superior liability may attach if an employee criticizes a co-employee in bad faith in a report filed with a state agency); Ramsey v. Greenwald, 91 Ill.App.3d 855, 47 Ill.Dec. 150, 414 N.E.2d 1266, 1272 (1980) (upholding a jury verdict premised on the theory that an employee who reported a co-employee's drug abuse and other misconduct was acting within the scope of employment). Furthermore, the defendants' communications to the DOE supervisor in Colorado, to Cherri Langenfeld, and to Secretary O'Leary and the congressmen were all prepared on DOE stationery and were all related to the defendants' discrimination grievances against Taboas. One of the exhibits attached to Taboas's complaint contains an affidavit from a former co-employee complaining that the defendants "are permitted limitless hours of work time to pursue this personal vendetta" against Taboas. Thus, the record demonstrates that the allegations against Taboas were made primarily during the hours and within the place of employment.[6]

Moreover, the accusations against Taboas at least in part promoted the employer's interest in a safe workplace. Taboas maintains that the allegations were made with malice and in bad faith, which, he contends, cannot promote any legitimate interest of the employer. Although the suggestion has been made that malice, bad faith, or self-interested motivation necessarily places conduct outside the scope of employment, see Ramsey, 47 Ill.Dec. 150, 414 N.E.2d at 1273 (Van Deusen, J., dissenting); Coleman v. Smith, 814 F.2d 1142, 1150-51 (7th Cir.1987) (Coffey, J., dissenting), this is not the prevailing approach in Illinois, see Wright v. City of Danville, 174 Ill.2d 391, 221 Ill.Dec. 203, 675 N.E.2d 110, 118 (1996) (acknowledging that "even the criminal acts of an employee may

---

6. The one significant exception is a phone call from one of the defendants to Taboas's ex-wife. According to Taboas, this phone call sought to dredge up any information or "dirt" that his ex-wife could provide in support of the defendants' allegations. This one incident, however, does not place the defendants' overall course of conduct outside the scope of their employment. The test is whether the conduct occurs "substantially within the authorized time and space limits," and the record shows that the bulk of the negative statements about Taboas were made on the job to responsible officials with colorable authority over the parties involved.

fall within the scope of employment"); *Coleman,* 814 F.2d at 1149–50 (applying Illinois law and holding that police officers who "usurped" and "misused" their power in conducting a false arrest nevertheless acted within the scope of employment), or elsewhere, *see, e.g., Maron v. United States,* 126 F.3d 317, 327 (4th Cir.1997) (applying substantively similar Maryland law and holding that the plaintiff's "unsubstantiated speculation about the ill will of his colleagues ... is not enough, in and of itself, to transform acts which are facially within the scope of employment into acts that fall outside of that scope."). Even if the defendants were motivated primarily by ill will towards Taboas, their actions nevertheless fall within the scope of employment so long as they are "actuated, at least in part, by a purpose to serve the master." *Pyne v. Witmer,* 129 Ill.2d 351, 135 Ill.Dec. 557, 543 N.E.2d 1304, 1308 (1989); *see also Randi F. v. High Ridge YMCA,* 170 Ill.App.3d 962, 120 Ill.Dec. 784, 524 N.E.2d 966, 970 (1988) ("[I]f an employee commits an intentional tort with the dual purpose of furthering the employer's interest and venting personal anger, respondeat superior may lie; however, if the employee acts purely in his own interest, liability under *respondeat superior* is inappropriate.").

Taboas points to the consultant's report as evidence that the employees' fears of violent reprisal were baseless, but the report sheds little light on the defendants' subjective motivations other than to note the defendants' tendency to rely on unsubstantiated hearsay. Taboas's allegations of malice are also contradicted by Cherri Langenfeld's contemporaneous impression, as described in an exhibit to Taboas's complaint, that the defendants "honestly feel that their expressed concerns are real." Thus, Taboas fails to meet his burden of demonstrating that the defendants' complaints were entirely unmotivated by a desire to alert superiors to a potentially dangerous workplace situation. We conclude, therefore, that the defendants acted within the scope of employment.

## IV.

Because the individual defendants were acting within the scope of their employment, we reverse the denial of the United States' motion for substitution as the sole defendant in this case, and we remand for further proceedings.