In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-3825

DONNA GARVIN, Individually and as Personal
Representative of the Estate of Alexis Christopher
Garvin, deceased, and STEVE GARVIN,

*Plaintiffs-Appellees*,

*v.*

LAWRENCE A. WHEELER, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 98-1243-C-Y/F—**Richard L. Young**, *Judge.*

ARGUED APRIL 16, 2002—DECIDED AUGUST 28, 2002

Before CUDAHY, COFFEY, and WILLIAMS, *Circuit Judges.*

COFFEY, *Circuit Judge.* This is a 42 U.S.C. § 1983 case
in which the plaintiffs claim that police officer Lawrence
Wheeler used excessive force against Alexis Garvin when
he shot and killed Garvin during the course of a burglary
investigation. On October 4, 2000, Judge S. Hugh Dillin[1]
denied Officer Wheeler's motion for summary judgment,

---

[1] On July 18, 2001 the case was reassigned from Judge Dillin to
Judge Young, who issued the decision from which Officer Wheeler
appeals.

ruling that there was a genuine issue of material fact regarding Officer Wheeler's credibility, which precluded summary judgment. Over ten months after Judge Dillin ruled on Officer Wheeler's summary judgment motion, Officer Wheeler filed a four-page motion before Judge Young, requesting leave to renew his summary judgment motion. Judge Young denied the defendant's motion and Wheeler appeals from that denial.

## I. Factual Background

On August 29, 1996, at approximately 1:05 a.m., Indianapolis Police Department (IPD) Officer Ronald Mills received a radio call that there was a burglary at Hart's Automotive in Indianapolis, Indiana. Officer Mills responded almost immediately to the call and was the first officer to arrive at the automotive shop. Once Mills arrived at Hart's, he observed that a panel had been removed from one of the building's garage doors. Officer Mills informed the dispatch operator that a burglary had occurred and, the operator, in turn, apprised assisting units of the situation.

Shortly after Mills confirmed that a burglary had occurred, Officer Wheeler responded to the dispatch operator's call and was approaching Hart's from the west on 26th street, allowing him to intercept any suspects fleeing *eastbound* from the scene. As he approached the site of the burglary, Wheeler spotted Alexis Garvin, walking alone at a normal rate of speed. According to Wheeler, Garvin was walking eastbound on 26th street (away from the scene of the crime) and was not carrying anything in his hands. Wheeler drove his marked police vehicle to within 10-15 feet of Garvin and turned on the vehicle's "alley lights" so that the area in which Garvin was walking was illuminated. As he exited the vehicle, Wheeler shined his flashlight at Garvin and asked what he was

doing there, but failed to identify himself as a police officer. When Wheeler shined the flashlight upon Garvin, Garvin began to flee.

At this point, the parties's versions of events sharply diverged. According to Wheeler, he prevented Garvin's flight by grabbing his shirt, but as Garvin turned to face Wheeler, Wheeler claimed that he observed Garvin reach for a gun in his waistband. Wheeler claimed that he and Garvin struggled for control of the gun, whereby they both fell to the ground. Wheeler contended that when Garvin began to gain control of the weapon, Wheeler (who was on top of Garvin on the ground) "rocked back, drew his [own] firearm and fired four successive shots at [Garvin]."

The plaintiffs tell a different story. According to plaintiffs, no struggle ever took place and Garvin never drew a gun—and thus Wheeler's use of deadly force was not justified. In support of their claims, plaintiffs question the credibility of Wheeler. They pointed out that his deposition testimony differed from that of Officers Mills and Toliver. Both Mills and Toliver claimed to have heard Wheeler report that he was pursuing a suspect, contrary to Wheeler's deposition testimony that he never radioed that he was pursuing a fleeing suspect. Further, both Mills and Toliver reported hearing Wheeler describe the suspect as running *westbound towards the burglary site*, as opposed to the easterly direction Wheeler claimed to have observed Garvin heading. Second, and far less trivial than the discrepancies in Wheeler's deposition testimony, the plaintiffs pointed out that the IPD's forensic analysis of the weapon Wheeler claimed that Garvin aimed at him revealed *no latent fingerprints*, despite the fact that Wheeler claimed the weapon never left Garvin's hand during the struggle.

Not quite two years after the shooting, on August 25, 1998, the plaintiffs filed suit in the Marion County, Indi-

ana, Circuit Court, alleging that Officer Lawrence Wheeler violated Alexis Garvin's civil rights under 42 U.S.C. § 1983, when he used excessive force in fatally shooting Garvin during a burglary investigation. Officer Wheeler promptly removed the suit to the federal court for the Southern District of Indiana under the court's federal question jurisdiction, 28 U.S.C. §§ 1441 & 1446.

On May 18, 2000, Officer Wheeler moved for summary judgment, asserting the affirmative defense of qualified immunity. According to Wheeler, his use of deadly force was justified because he faced a potentially life-threatening situation. Before the trial court, the parties hotly contested the series of events that led to the tragic death of Alexis Garvin and the district court viewed them, as it was required to do in reviewing a motion for summary judgment, in the light most favorable to the nonmoving party, the Garvins. The plaintiffs pointed out the inconsistences referred to above and argued that the lack of fingerprints on the gun and the inconsistencies in Wheeler's story called into question his credibility. Because of Wheeler's lack of credibility, the plaintiffs argued that there was a genuine issue of material fact regarding whether any struggle actually occurred, thus precluding summary judgment. After reviewing the record, we agree with the trial court's determination that Wheeler was less than truthful in his recitation of the facts leading up to Alexis Garvin's death.

After being presented the conflicting versions of events, Judge Dillin denied Officer Wheeler's motion for summary judgment on October 4, 2000.[2] The trial judge noted that "[u]nder [Officer Wheeler's] set of facts, the Supreme

---

[2] Under Federal Rule of Appellate Procedure 4(a)(a)(A), Officer Wheeler was required to file a notice of appeal with the district court clerk within 30 days after the judgment was entered.

Court's decision in [*Tennessee v. Garner*, 471 U.S. 1 (1985)] entails a finding that Officer Wheeler's use of deadly force was reasonable." But the trial judge went on to note that because Officer Wheeler is the only surviving witness to the series of events leading to Garvin's death, that the officer's credibility was "crucial to the case . . . [and] should the finder of fact believe Officer Wheeler and find his testimony credible, no violation of the Fourth Amendment has occurred. However, if the finder of fact believes that no struggle took place and that [Garvin] never drew a gun, the reasonableness of Officer Wheeler's use of deadly force becomes questionable." The trial judge found Wheeler's version of events to be less than credible and went on to conclude that, based on the inconsistencies in Officer Wheeler's deposition testimony and the absence of any of Garvin's fingerprints on the gun he allegedly aimed at Wheeler, there was a genuine issue of fact as to Wheeler's credibility. Thus Judge Dillin ruled that summary judgment was inappropriate.

Wheeler *never* did file a notice of appeal from Judge Dillin's October 4, 2000, denial of qualified immunity, and discovery in the case proceeded. During that additional discovery, plaintiffs deposed David Brundage, a supervising forensic scientist for the Indianapolis-Marion County Forensic Services Agency. In that deposition of Wheeler's own expert witness, Brundage testified that the entry and exit wounds on Garvin's body were not consistent with Wheeler's testimony with regard to how the shooting took place, thus further calling into question Wheeler's version of events.

On August 7, 2001, nearly ten months after the trial court had previously denied qualified immunity, Wheeler filed a four-paragraph motion for leave to file renewed motion for summary judgment. Defendant's motion asserted that a case decided by the Supreme Court two months earlier, *Saucier v. Katz*, 533 U.S. 194 (June 18, 2001),

demonstrated that Judge Dillin's denial of summary judgment was in error. Judge Young denied defendant leave to renew his summary judgment motion, ruling that *Saucier* did not impact Judge Dillin's analysis. Wheeler appeals from Judge Young's denial of leave to file a renewed summary judgment motion.

## II. Jurisdiction

Before proceeding to the merits of Officer Wheeler's arguments, we must first determine whether this court has jurisdiction to hear Wheeler's interlocutory appeal. Ordinarily, the denial of a defendant's motion for summary judgment is not an appealable order because it is not a "final decision" of the trial court. 28 U.S.C. § 1291; *Coady v. Steil*, 187 F.3d 727, 730 (7th Cir. 1999); *Rambo v. Daley*, 68 F.3d 203, 205 (7th Cir. 1995). The Supreme Court has articulated one narrow exception to the finality rule: the collateral order doctrine. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978). The collateral order doctrine applies to interlocutory orders that "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and [are] effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand*, 437 U.S. at 468. The denial of a defendant's motion for summary judgment is an immediately appealable collateral order where the defendant was a public official asserting qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 528-30 (1985).

But this does not carry the day for Wheeler, for he failed to appeal Judge Dillin's October 4, 2000, denial of his summary judgment motion asserting qualified immunity. Instead, Wheeler waited more than ten (10) months after Judge Dillin initially rejected his qualified immunity defense and sought leave from Judge Young to raise the

defense again. We are well aware of the rule that a second appeal under the collateral order doctrine is permissible with respect to qualified immunity claims. *See Behrens v. Pelletier*, 516 U.S. 299 (1996); *Bakalis v. Golembeski*, 125 F.3d 576 (7th Cir. 1997). *Behrens*, however, is inapplicable to the case at hand. The Supreme Court's holding in *Behrens* allowed defendants to renew their motions for summary judgment when the factual predicates of that defense developed as discovery progressed, reasoning that the qualified immunity defense might mature as the litigation progressed and the defendant ought to be able to receive the full protections of the qualified immunity doctrine as factual information was developed. This is not such a case. Wheeler presented the trial court with no additional facts collected during discovery. Contrary to the scenario envisioned in *Behrens* where additional facts gleaned from discovery bolstered a qualified immunity defense, the only additional facts discovered by either party during the time period between Wheeler's two motions related to the IPD's forensics experts' deposition testimony that the entry and exit wounds on the deceased's body were inconsistent with Wheeler's version of events. Rather than strengthen Wheeler's claim for qualified immunity, these new facts only seem to cast *further doubt* on his credibility and recitation of the version of events of the night of August 29, 1996.

Instead, the basis of Wheeler's request to renew his summary judgment motion was that the controlling legal standard had changed since he initially pressed his qualified immunity defense. Of course, a trial court may, in the exercise of its discretion, allow a party to renew a previously denied summary judgment motion. *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995); *Kirby v. P.R. Mallory & Co.*, 489 F.2d 904, 913 (7th Cir. 1973). A renewed summary judgment motion is appropriate if one of the following grounds exist: (1) an intervening change

in the controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or prevent manifest injustice. *Whitford*, 63 F.3d at 530.

In this instance, defendant Wheeler claims that *Saucier v. Katz*, 533 U.S. 194 (June 18, 2001), worked a fundamental change in the law of qualified immunity that should allow him to reopen his motion for summary judgment. But defendant Wheeler overstates the import of *Saucier*. *Saucier* was not a hallmark reformulation of the qualified immunity analysis. Instead, *Saucier* stressed that a trial court must engage in the two-part qualified immunity analysis (asking first whether a constitutional right was violated and second whether that right was clearly established) *before* it engages in other analysis. *Id.* at 200-01. Judge Dillin did just that when he expressly noted that *Garner* governed an officer's use of deadly force and that if Wheeler's version of events were believable, then in that instance he would be entitled to qualified immunity. Judge Dillin, however, found that Officer Wheeler's version of events was less than credible and therefore that the plaintiffs had established that a reasonable officer could not have believed his action (fatally shooting an unarmed suspect) to be reasonable. Thus, Judge Dillin did engage in the two-part qualified immunity test required by *Saucier*.

In *Justice v. Town of Blackwell*, 820 F.2d 238 (7th Cir. 1987), we declined to accept jurisdiction over an interlocutory appeal from the denial of a motion to amend the answer to include the defense of qualified immunity. In that case, the trial judge did not address the merits of the qualified immunity defense, but instead denied the motion because of the lengthy delay between the filing of the defendant's answer and the motion to amend. We think the case before us is analogous: Wheeler *never appealed* from Judge Dillin's denial of his claim of qualified immunity and instead waited nearly a year before seeking leave

to renew that claim (notwithstanding the fact that the facts of the case had not changed). The Federal Rules of Appellate Procedure allot 30 days time for Wheeler to have filed a notice of appeal, and the time for Wheeler to appeal Judge Dillin's denial of his qualified immunity motion has long since passed. *See* Fed. R. App. P. 4(a). Given Wheeler's tardiness in renewing his motion for summary judgment (he waited nearly ten months after it was denied and nearly two months after *Saucier* was issued to renew it), we think that this appeal does not fall within the ambit of the collateral order doctrine allowing for appeals from the denials of qualified immunity. As Judge Young astutely commented, "this case is old and needs to be tried."

But there is another reason to decline to exercise jurisdiction over Wheeler's appeal. *Mitchell* held that a "district court's denial of a claim of qualified immunity, *to the extent that it turns on an issue of law*, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." (emphasis added). 472 U.S. at 530. In other words the collateral order doctrine does not permit an immediate appeal of a trial court's denial of qualified immunity when the court's summary judgment order rests on a determination that there are genuine issues of fact requiring a trial. *Johnson v. Jones*, 515 U.S. 304, 319-320 (1995); *see also Taboas v. Mlynczak*, 149 F.3d 576, 579; *Bakalis*, 125 F.3d at 578; *Rambo*, 68 F.3d at 207. "If the district court's order rests on the existence of disputed factual issues, rather than on issues of law, the collateral order doctrine does not permit an immediate appeal from that decision." *Talboas*, 149 F.3d at 579.

Wheeler suggests that his appeal turns upon an issue of law and that there are no disputed facts. Wheeler's characterization that his dispute is legal, rather than factual, is less than accurate. In the underlying denial

of summary judgment, Judge Dillin clearly held that "if the finder of fact believes that no struggle took place and that [Garvin] never drew a gun, the reasonableness of Officer Wheeler's use of deadly force becomes questionable." Judge Dillin went on to rule that issues regarding Wheeler's credibility made it possible that a fact finder could believe the plaintiffs' version of events, in which Wheeler resorted to the use of deadly force on a suspect who had not committed or threatened any act of violence. Wheeler does not contend, nor could he, that under the plaintiffs' version of the facts his actions could be considered objectively reasonable. *Tennessee v. Garner* clearly does not allow police officers to use deadly force on unarmed burglary suspects who have neither threatened the officer with a weapon nor committed a crime involving the infliction of serious physical harm. 471 U.S. 1, 11 (1985). The essential dispute, therefore, concerns whether Officer Wheeler's or the plaintiffs' version of the facts is true.

In short, if the factfinder were to accept Officer Wheeler's version of the events, he would be entitled to qualified immunity, for it is objectively reasonable for a police officer to defend himself when a suspect aims a weapon at him. But under the plaintiffs' version of the facts, where no struggle occurred, Officer Wheeler shot a suspect who was neither armed nor resisting. As Judge Dillin found, there were a number of inconsistencies in Wheeler's recitation of events, which in turn called into question his credibility. For example, police, after a thorough inspection, failed to find even a single partial print on the gun Garvin allegedly aimed at him. Wheeler's deposition testimony, which conflicted with that of other officers reporting to the scene of the crime (particularly with respect to the direction Wheeler claimed Garvin had been heading), dealt another blow to his credibility. Finally and perhaps most damaging to Wheeler's credibility,

the entry and exit wounds on Garvin's body were inconsistent with Wheeler's description of the shooting according to the IPD's forensic scientists. Judge Dillin correctly observed that this is a factual, not a legal, dispute. We have consistently held that a cry of "I didn't do it" does not present any distinctly legal issue or seek protection from legal uncertainty, and therefore cannot be raised in an interlocutory appeal from the denial of qualified immunity. *Taboas*, 149 F.3d at 579; *Gorman v. Robinson*, 977 F.2d 350, 354-55 (7th Cir. 1992); *Elliott v. Thomas*, 937 F.2d 338, 342-43 (7th Cir. 1991). *Mitchell* does not allow us to hear disputes on interlocutory appeal regarding which facts the parties might be able to prove at trial. 472 U.S. at 530; *see also Johnson*, 515 U.S. at 319-20

Wheeler had a thirty-day window in which to file a notice of appeal challenging Judge Dillin's *legal* conclusions regarding his motion for summary judgment and he failed to do so. We are without jurisdiction to hear his belated appeal. For the foregoing reasons, we DISMISS the appeal for lack of jurisdiction.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
