Saundra **HENSON** and Milton Randall, Plaintiffs–Appellants,

v.

**NATIONAL AERONAUTICS AND SPACE ADMINISTRATION** and Julian M. Earls, Defendants–Appellees.

No. 92–4369.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 12, 1993.

Decided Jan. 28, 1994.

Denise J. Knecht, Cleveland, OH (argued and briefed), for plaintiffs-appellants.

Emily M. Sweeney, U.S. Atty., Lynne H. Buck, Asst. U.S. Atty. (argued and briefed), Cleveland, OH, for defendants-appellees.

Before: GUY and RYAN, Circuit Judges; and MILES, Senior District Judge.*

PER CURIAM.

Saundra Henson was an employee of the National Aeronautics and Space Administration's ("NASA") Lewis Research Center in Cleveland, Ohio. She worked within the division of Health, Safety, and Security. Henson filed a lawsuit against NASA and her division chief, Julian M. Earls, in the United States District Court for the Northern District of Ohio. Henson claimed that NASA and Earls committed several common law torts against her. In addition, Henson claimed that NASA violated the Privacy Act by divulging personal medical information to other NASA employees. The district court disposed of the case on summary judgment. The district court granted summary judgment on the common law tort claims because these claims

---

* The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation.

must be pursued through the Federal Tort Claims Act which requires an administrative procedure, not a judicial one. The court granted summary judgment on the Privacy Act claim because the court held that there was no genuine dispute of a material fact. Henson appeals. For the reasons stated below, the decision of the district court is affirmed on the common law tort claims and reversed on the Privacy Act claim.

## FACTS

In 1977, Saundra Henson began employment at NASA's Lewis Research Center, located in Cleveland, Ohio. She was employed as a Senior Industrial Hygienist within the Environmental Health and Chemical Analysis Branch of the Division of Health, Safety, and Security. The division chief was Julian M. Earls. The branch chief was Albert B. Smith.

In June 1985, NASA held a meeting of senior staff management which both Earls and Henson attended. During the meeting, Earls allegedly reported that no asbestos-related problems existed at the Lewis Research Center. Henson allegedly contradicted Earls's assessment. Henson stated that asbestos conditions were unsafe. She noted a variety of incidents where employees were exposed to asbestos.

Henson claims that after the meeting Earls began treating her differently. For example, she claims that Earls denied her permission to attend a conference which he had previously told her she could attend, that he threatened to transfer her, that he had referred her name to an employment recruiter, that he denied her a budget to attend a course on asbestos abatement, that he moved her office to the basement, and that he failed to discipline an employee who had threatened her.

On November 16, 1985, Henson filed a claim for workers' compensation alleging a work-related illness. Specifically, she claimed that she had stress-related symptoms which resulted from the co-worker's threat and other employment incidents involving Earls. Her workers' compensation claim was approved, and she took leave for 16 months, returning in March 1987.

Prior to Henson's return, Smith scheduled a meeting of the Environmental Health and Chemical Analysis Branch staff, although the evidence suggests that others outside the branch may have attended.[1] One of the topics of discussion was the return of Henson. The agenda for the meeting stated that Henson will be welcomed back with a "Welcome Back Saundra" banner and a cake. Earls requested Dr. John J. Gulan to attend the meeting. Dr. Gulan was Chief of the Occupational Medicine Office. Dr. Gulan's responsibilities included the certification and qualification of personnel. Earls requested Dr. Gulan to discuss Henson's medical condition and her return to work. Dr. Gulan was familiar with Henson's medical condition because Henson and her medical providers submitted medical information to Dr. Gulan's office in order that her workers' compensation claim could be processed. The information was placed in a workers' compensation file. Dr. Gulan told the staff that Henson had been under psychiatric care.

Henson was a member of the Lewis Engineers and Scientists Association, Local 28, AFL–CIO. The union filed a labor grievance claiming that the meeting violated the collective bargaining agreement because it discussed Henson's personal medical history without advance notice to the union or to Henson. NASA settled the grievance by posting a notice that it would not hold similar meetings in the future.

After Henson returned to work, she claims that she was treated differently. For example, Henson claims that Earls advised his secretary that "Any memo of Saundra Henson's has no weight." She claims that she was not given responsibilities and that subordinate employees were given preferential treatment. Also, she claims that she was not allowed to secure equipment without a loan slip, a policy never before required.

1. The affidavit of Pat Eckenfels stated that she was at the meeting but was not in the same branch as Henson.

On January 29, 1988, Henson filed a seven-count lawsuit against NASA and Earls in the United States District Court for the Northern District of Ohio. The lawsuit claimed that NASA violated the Privacy Act by releasing confidential medical information without her consent. The lawsuit also claimed that NASA and Earls invaded her privacy and slandered her reputation, that Earls interfered with her employment contract, that Earls intentionally or negligently inflicted severe emotional distress, that NASA and Earls engaged in an intentional, reckless, malicious, and tortious pattern of abusive management, harassment, and threats, that NASA ratified the conduct of Earls, and that her husband had lost the love, affection, support, assistance, and consortium of Henson.

On June 16, 1988, NASA and Earls filed a motion for summary judgment.

On November 2, 1988, the United States filed a motion to substitute the United States as a defendant, in place of Earls. The United States may substitute itself for an employee who committed a tort while acting within the scope of employment. Henson challenged the substitution on the ground that Earls was not acting within the scope of his employment "[s]ince Plaintiffs believe that at least some of Mr. Earls' actions were unlawful and in violation of NASA's own policies and union contractual agreements...." Specifically, she alleged that the meeting prior to her return was not work related. Henson requested that the court hold a hearing to determine the issue.

On June 20, 1990, the district court granted partial summary judgment on the common law tort claims after allowing the United States to substitute itself for Earls on some of the counts. The court held that Earls was acting within the scope of his employment because the meeting was work related in that it advised Henson's co-workers about her return from medical leave. Therefore, these claims against the United States must be pursued under the Federal Tort Claims Act which requires an administrative, not judicial, procedure. The district court, however, noted that the Federal Tort Claims Act provides no remedy for the claims of slander and interference with the employment contract,

thus the district court held that these claims may be pursued against the individual employee. These torts were then dismissed under the theory of absolute immunity. The district court did not rule on the Privacy Act claim because it held that the parties deserved more time for discovery before addressing the issue and, further, stated that the issue could be raised in a subsequent motion for summary judgment.

On November 13, 1990, NASA renewed its motion for summary judgment on the Privacy Act count. NASA claimed that Henson had failed to allege that the information divulged came from a record within a system of records. NASA claimed that if the information came from a record within a system of records then the divulsion was permissible under an exception which allows divulsion to employees who need to know. NASA also claimed that Henson had not alleged that the action was intentional or willful or that Henson had not demonstrated that she was entitled to damages. In response, Henson provided the affidavit of Dr. Gulan who stated that NASA maintains a system of records for workers' compensation claims and that he revealed information from Henson's workers' compensation file to the staff. Dr. Gulan stated that he revealed the information to the entire branch, not just people who worked directly and closely with Henson. Henson claimed that Earls ordered the release in retaliation for her contradictory remarks about asbestos problems at the Lewis Research Center. Henson claimed she was entitled to damages for mental and physical injuries, as well as a statutory minimum of $1000.

Two years later, on November 12, 1992, the district court, relying on *Manuel v. Veterans Admin. Hosp.*, 857 F.2d 1112 (6th Cir. 1988), *cert. denied*, 489 U.S. 1055, 109 S.Ct. 1317, 103 L.Ed.2d 586 (1989), granted summary judgment on the Privacy Act count, holding that Henson had failed to provide any information that a system of records existed and that the medical information was divulged from that system. The district court stated that "Dr. Gulan's affidavit contains only a conclusory allegation that NASA maintains a system of records containing

workers' compensation information." The district court noted that such a system of records did not appear in the Federal Register, as required by law.

Henson appeals to this court on two grounds. First, she claims that the district court erred in dismissing her tort claims based upon the remedy provided by the Federal Tort Claims Act (this issue is unartfully pled because Henson has confused the tort claims dismissed based on the Federal Tort Claims Act and those dismissed based on absolute immunity). Henson claims that the court should have held a hearing to decide whether Earls was acting within the scope of his employment. Henson also claims that the district court erred in dismissing the claims of slander and interference with contract based on absolute immunity. Second, Henson claims that the district court erred in granting summary judgment on the Privacy Act count because a genuine issue of a material fact existed.

## DISCUSSION

### Common Law Tort Claims

■ The Federal Employees Liability Reform and Tort Compensation Act shields federal employees from liability for common law torts committed within the scope of employment. Under the Act, the United States shall be substituted for the employee as a defendant in any common law tort action initiated against an employee if the employee was acting within the scope of employment. 28 U.S.C. § 2679(d)(1). Such substitution will be granted upon the certification of the Attorney General that the employee was acting within the scope of employment. Certification is reviewable by the district court. *Arbour v. Jenkins*, 903 F.2d 416, 421 (6th Cir.1990); *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538 (11th Cir.1990), *amended*, 924 F.2d 1555 (11th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 62, 116 L.Ed.2d 37 (1991).

■ The remedy for an action in which the United States has been substituted for the employee is provided by the Federal Tort Claims Act and lies against the United States, not the individual. Moreover, "[t]he remedy against the United States provided by the [Federal Tort Claims Act] for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment *is exclusive of any other civil action* or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim.... *Any other civil action* or proceeding for money damages arising out of or relating to the same subject matter *against the employee ... is precluded* without regard to when the act or omission occurred." 28 U.S.C. § 2679(b)(1) (emphasis added).

■ The Federal Tort Claims Act excepts many torts from coverage. 28 U.S.C. § 2680. Among the torts excepted from coverage are slander and interference with contract. 28 U.S.C. § 2680(h). However, the employee may not be sued even when the alleged tort is not compensable due to an exception to the Federal Tort Claims Act. *United States v. Smith*, 499 U.S. 160, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991).

■ A determination of whether an employee was acting within the scope of employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred. *Arbour*, 903 F.2d at 421–22. Under Ohio law, an employee acts within the scope of employment if the employee acts within its authority during the course of employment even though acting intentionally or maliciously. However, an employee is not acting within the scope of employment if its acts are self-serving and in no way facilitate or promote business, or for " 'an intentional and wilful attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person.' " *Woods v. McGuire*, 954 F.2d 388, 390 (6th Cir.1992) (citation omitted).

■ In the instant case, the district court properly granted summary judgment on the common law tort claims; however, the district court's reasoning with respect to slander and interference with contract claims was flawed. The district court properly sub-

stituted the United States for Earls after determining that Earls was acting within the scope of his employment. The court was forced to make an independent evaluation because Henson objected to the Attorney General's certification. In doing so, the court was obliged to apply Ohio law. Although the district court did not state that its decision was based on Ohio law, this court finds that the district court's decision was certainly consistent with Ohio law because Earls was acting within his authority as division chief when he committed the alleged tortious actions. The mere fact that his actions may have been unlawful or in violation of the labor agreement is not enough, by itself, to find the actions outside his authority. No hearing was necessary because Earls' actions were within his scope of employment even if Henson's assertions are true. Therefore, Henson's only remedy on the common law tort claims was against the United States under the Federal Tort Claims Act. These claims were then properly dismissed because the Federal Tort Claims Act requires an administrative procedure, not a judicial one.

■ The district court, also, correctly noted that the claims of slander and interference with contract are exempt from coverage under the Federal Tort Claims Act. However, it erred in holding that these claims may be pursued against the employee. As the Court held in *Smith,* a plaintiff's exclusive remedy for a common law tort committed by a federal employee within the scope of employment lies in an action against the United States under the Federal Tort Claims Act. The employee is shielded from liability even if the Federal Tort Claims Act does not provide relief. 499 U.S. 160, 111 S.Ct. 1180.

### Privacy Act Claim

■ A case may be disposed by a motion for summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if it would affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over a material fact is

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Summary judgment is appropriate after sufficient time for discovery if a party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element to that party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553; Fed.R.Civ.P. 56(e).

The Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person ... except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains...." 5 U.S.C. § 552a(b). The Act makes an exception for disclosure "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1). The Act defines a record as "any item, collection, or grouping of information about an individual that is maintained by an agency, including but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph." 5 U.S.C. § 552a(a)(4). The Act defines a system of records as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). The agency is required by law to publish a notice of a system of records in the Federal Register. 5 U.S.C. § 552a(e)(4).

■ An individual may file a civil action against an agency that fails to comply with the provisions of the Privacy Act in such a way that adversely affects the individual. 5

U.S.C. § 552a(g)(1)(D). In order to receive damages, the plaintiff must prove that the government's actions were intentional or willful. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987) (citing cases from the Fifth and Eighth Circuits).

In the instant case, the district court erred in granting summary judgment. The affidavit of Dr. Gulan is sufficient to defeat summary judgment by establishing that information contained in a system of records was divulged. Dr. Gulan's affidavit stated that NASA maintains a system of records of workers' compensation files. Further, Dr. Gulan's affidavit stated that he divulged information from Henson's workers' compensation file to the branch staff. Dr. Gulan's affidavit implied that he believed that the information was divulged to people who did not need to know the information. The district court erred by dismissing Dr. Gulan's affidavit as conclusory. Dr. Gulan was Chief of the Occupational Medical Office. He was directly responsible for overseeing medical records at the Lewis Research Center. He would certainly know whether NASA maintained a system of records for workers' compensation files. Moreover, he would know whether the information he divulged came from Henson's record. The district court dismissed Dr. Gulan's assertions in his affidavit ruling that the existence of a system of records for workers' compensation files did not appear in the Federal Register, as required by law. The court apparently believed that the federal government is incapable of violating its own laws and regulations. The absence of notice in the federal register and Dr. Gulan's affidavit merely create a genuine dispute as to a material fact.

The district court's reliance on *Manuel v. Veterans Admin. Hosp.* was misplaced. *Manuel* is factually different from the case at hand. In *Manuel,* the plaintiff alleged a violation of the Privacy Act because the Veterans Administration Hospital had failed to release to him three documents that he claimed should have been kept in a system of records. However, no genuine dispute existed as to the fact that the documents were never placed into a system of records. *Manuel* held that the Privacy Act only applies to records once they are placed into a system of records and not to records that arguably should have been placed into a system of records but were not. The instant case involves a genuine dispute as to whether the records in question were placed into a system of records.

A genuine dispute of fact also exists as to whether the employees at the meeting needed to know. Dr. Gulan's affidavits suggests that he did not believe that all the employees needed to know the divulged information. An affidavit submitted by Pat Eckenfels, an employee who attended the meeting, stated that Eckenfels did not believe that she needed to know this information. Eckenfels's affidavit stated that she worked in a different branch than Henson, which raises the question as to whether the meeting included employees outside of Henson's branch.

Finally, a genuine dispute of fact exists as to whether Earls acted intentionally. Henson has presented a motive for Earls to intentionally divulge private information—retaliation for contradicting him about asbestos problems at the Lewis Research Center. In addition, Dr. Gulan's affidavit stated that Earls compelled him, against his own wishes, to discuss privileged medical information contained in Henson's workers' compensation file. Henson does not need to prove damages because the Act provides for a statutory minimum of $1000. 5 U.S.C. § 552a(g)(4)(A).

## CONCLUSION

For the reasons stated above, the decision of the district court granting summary judgment on the common law tort claims is **AFFIRMED,** and the decision of the district court granting summary judgment on the Privacy Act claim is **REVERSED.**