John **MAHER** and Hilda Maher, Plaintiffs,

v.

**NORTHLAND INSURANCE COMPANY, Defendant.**

No. Civ.A. 96–40456.

United States District Court, E.D. Michigan, Southern Division.

Jan. 27, 1998.

Matthew G. Curtis, Sommers, Schwartz, Southfield, MI, David W. Hearsch, Hearsch & Rinn, Sandusky, MI, for plaintiffs.

Steven B. Galbraith, Galbraith, Booms, Southfield, MI, Paul B. Hines, Galbraith & Booms, Southfield, MI, for defendant.

*MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT*

GADOLA, District Judge.

Before the court are cross-motions for summary judgment. The instant action con-

cerns whether an insurance policy issued by defendant, Northland Insurance Co. ("Northland"), covers an injury suffered by plaintiffs, John and Hilda Maher. This court conducted a hearing on plaintiffs' motion for summary judgment on November 12, 1997. At that time, it became apparent that the issue before this court was whether Northland had properly cancelled plaintiffs' insurance policy. Because the facts surrounding the purported cancellation are undisputed, the case appeared ripe for summary adjudication. However, Northland had not yet filed its motion for summary judgment. This court indicated at the November 12, 1997 hearing that it would reserve judgment on plaintiffs' motion until it could address both motions. Northland filed its motion for summary judgment on November 20, 1997.[1]

For the reasons set forth below, this court will grant defendant's motion and deny plaintiffs' motion.

**Factual Background**

In October of 1992, plaintiffs entered into a contract with Cliff Lorenzen d/b/a Mike Davis House and Building Movers ("Lorenzen") pursuant to which Lorenzen agreed to repair plaintiffs' barn. Lorenzen completed work in August of 1993. On December 23, 1993, Hilda Maher fell through the floor of the barn and suffered severe injuries when the floor of the barn collapsed under her.

Prior to the time of the accident, Lorenzen had been insured under a commercial policy issued by Northland. On September 13, 1993, Lorenzen renewed his policy for a year, effective September 16, 1993. Lorenzen financed his policy through Insta–Prem, a premium finance company, under an agreement that required payments on or before the sixteenth of each month throughout the term of the policy. The financing agreement contained a cancellation provision that provided:

CANCELLATION OF POLICIES: Insta–Prem may cancel above policies in accordance with [Mich.Comp.Laws § 500.1511] if any installment or late

---

1. The parties do not introduce any new arguments in their briefs related to Northland's motion for summary judgment. Instead, they incorporate by reference the arguments raised in the briefs related to plaintiffs' motion for summary judgment.

charges are not paid by 21 days after due date.[2]

Lorenzen failed to make his November 16, 1993 payment. Insta–Prem sent a past due notice to Lorenzen on November 29, 1993, which advised Lorenzen that failure to make the payment within 10 days would result in the issuance of a cancellation request. On December 8, 1993, Insta–Prem sent a cancellation request to Northland, asking that Lorenzen's policy be cancelled for nonpayment effective December 9, 1993. On December 16, 1993, Special Risks, the broker for Northland, sent a letter to Lorenzen confirming that the policy had been cancelled for nonpayment of premiums effective December 9, 1993. In this time period, Lorenzen did not make any effort to contact Northland, Insta–Prem or Special Risks. Lorenzen also did not obtain any other insurance.

In the wake of Hilda Maher's fall, plaintiffs filed a personal injury action against Lorenzen in Sanilac County Circuit Court on April 13, 1994. On July 31, 1994, Mr. Lorenzen died as a result of circumstances unrelated to this litigation. The original suit was dismissed without prejudice for lack of progress on December 20, 1995. However, the case was reinstated on December 27, 1995, this time with the estate of Cliff Lorenzen as the defendant. At all relevant points, plaintiffs notified Northland of the proceedings against Lorenzen. By letter dated February 18, 1994, Northland advised plaintiffs that Northland's position was that Lorenzen's insurance had lapsed, and Northland expressed its intention not to be involved at all in defending the claim against Lorenzen.

On May 31, 1996, plaintiffs and Lorenzen's estate settled the personal injury litigation, and a consent judgment was entered by the Sanilac County Circuit Court in the amount of $100,000.00. The consent judgment further provided that plaintiffs could recover only from Northland, and that plaintiffs would be fully responsible for pursuing that relief. No recovery is possible under the judgment against Lorenzen's estate directly.

On November 19, 1996, plaintiffs filed the instant action against Northland in Sanilac County Circuit Court. Northland removed the case to this court on December 23, 1996. Plaintiffs filed their motion for summary judgment on July 30, 1997, and Northland filed its motion for summary judgment on November 20, 1997.

**Discussion**

**1. Summary judgment standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander,* 822

---

**2.** Section 500.1511 provides:

(1) When a premium finance agreement empowers the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the premium finance company unless such cancellation is effectuated in accordance with this section. (2) Not less than 10 days' written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract unless the default is cured within the 10–day period.

(3) After expiration of the 10–day period, the premium finance company may request cancellation of the insurance contract by mailing to the insurer a notice of cancellation, and the insurance contract shall be cancelled by the insurer without requiring the return of the insurance contract. The premium finance company shall also mail a notice of cancellation to the insured at his last known address at the same time the premium finance company requests cancellation of the insurance contract. Mich.Comp.Laws § 500.1511.

F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration,* 14 F.3d 1143, 1148 (6th Cir.1994) A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland,* 988 F.2d 649 (6th Cir.1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must

produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701, 1991 WL 49687 (6th Cir.1991).

### 2. Analysis

#### a. Validity of the cancellation of the policy by Northland

■ The primary issue before this court is whether Northland properly cancelled the insurance policy held by Lorenzen.

The undisputed chain of events is as follows:

11/16/93— Lorenzen's monthly installment payment due

11/29/93— Insta–Prem sends notice of intent to cancel policy for non-payment

12/8/93— Insta–Prem sends request for cancellation effective 12/9/93

12/23/93— Hilda Maher suffers the injury

Plaintiffs assert that Northland did not properly cancel the insurance policy according to the terms of the Insta–Prem financing agreement. The agreement provides that Insta–Prem may cancel the policy "in accordance with [Mich.Comp.Laws § 500.1511] if any installment or late charges are not paid by 21 days after the due date." Plaintiffs then point out that § 500.1511 requires ten (10) days written notice. Plaintiffs contend that the two time periods may not run simultaneously. In other words, plaintiffs argue that Insta–Prem was required to wait the full 21 days before sending out the ten-day notice required by § 500.1511. Here, Insta–Prem sent out its ten-day notice of intent to cancel on November 29, 1993, only thirteen days after the payment due date. Plaintiff contends this is a violation of the installment agreement.

Moreover, plaintiffs argue that Insta–Prem violated the terms of § 500.1511 when it sent the request for cancellation on December 8, 1993, only nine (9) days after issuing the notice of intent to cancel. Plaintiff relies on the language of § 500.1511(3), which provides:

After the expiration of the 10–day period, the premium finance company may request cancellation of the insurance contract by mailing to the insurer a notice of cancellation.... The premium finance company shall also mail a notice of cancellation to the insured at his last known address at the same time the premium finance company requests cancellation of the insurance contract.

Mich.Comp.Laws § 500.1511(3). Plaintiffs contend that the language of the statute expressly commands that the request for cancellation be sent *after* the expiration of the 10–day period. Here, Insta–Prem sent the request for cancellation after only nine days. Accordingly, plaintiffs argue that Northland did not properly cancel the policy, and therefore that the policy was still in effect at the time of the accident.

Northland counters by arguing first that the time periods provided by the contract and the statute can run simultaneously. In Northland's view, the installment agreement provides that the policy can be cancelled for non-payment no sooner than 21 days after the payment due date. Here, that would have been December 7, 1993. Therefore, as long as the notice provisions of § 500.1511 are complied with, the cancellation date of December 9, 1993 is within the terms of the installment agreement.

As for the 10–day period required by the statute, Northland contends that the request for cancellation was not effective by its terms until December 9, 1993. Northland argues that it gave ten days notice of the intent to cancel regardless of the fact that the request for cancellation was sent after only nine days. Therefore, Northland contends that the ten-day notice requirement of § 500.1511 was satisfied.

At the outset, this court notes that this is a case of first impression. The parties were unable to come forth with any prior decision on the issue, and this court did not uncover any authority directly on point in its own research. Given the facts of this case, this court holds that Northland did properly cancel the insurance contract in this case.

First, this court holds that the time periods set forth in the agreement and the statute can run simultaneously. The most logical construction of the plain language of both the agreement and the statute is that the agreement sets the earliest date that the actual cancellation of the policy can take effect. The statute then provides the method by which notice must be given to bring the cancellation about. Here, the earliest possible date of cancellation for non-payment of the November 16, 1993 payment was December 7, 1993. The actual date of cancellation was December 9, 1993. Hence, the terms of the agreement are satisfied.

■ Moreover, this court finds Northland complied with its obligations under § 500.1511. The statute requires the premium finance company to give the insured ten days notice before requesting cancellation of the policy. The ten-day notice was sent on November 29, 1993, and the cancellation became effective ten days later, December 9, 1993. Section 500.1511(3) provides that the premium finance company may request cancellation of the insurance contract after the expiration of the 10–day period. While plaintiffs argue that the premium finance company must wait to *mail* the request for cancellation until after the expiration of the 10–day period, it is not the *mailing* of the request for cancellation that operates to terminate the policy. Rather, it is the request itself. The request for cancellation sent to the insurance company did not become effective until after the 10–day notice period had expired. As a result, the insured was afforded the rights guaranteed under the statute. Accordingly, Northland's cancellation was effective.

As a result, Northland is able to demonstrate that plaintiffs are not entitled to recover under this policy as a matter of law. Therefore, this court will grant Northland's motion for summary judgment, and deny plaintiffs' motion for summary judgment.

Accordingly, this court having reviewed the submissions of the parties, and being fully advised in the premises,

**IT IS HEREBY ORDERED** that the November 20, 1997 motion for summary judgment filed by defendant, Northland Insurance Company, is **GRANTED**.

IT IS FURTHER ORDERED that the complaint of plaintiffs, John and Hilda Maher, is **DISMISSED with prejudice.**

IT IS FURTHER ORDERED that the July 30, 1997 motion for summary judgment filed by plaintiffs is **DENIED.**

**SO ORDERED.**

### JUDGMENT

This action came before this court, the Honorable Paul V. Gadola, District Judge presiding, and the issues having been fully presented and the court being fully advised in the premises, and a decision having been duly rendered,

IT IS HEREBY ORDERED AND AD-JUDGED that the plaintiffs, John and Hilda Maher, take nothing in this action against defendants, and that their complaint be DIS-MISSED with prejudice.

**SO ORDERED.**