### ALLSTATE INSURANCE CO., Plaintiff,

v.

### Denise QUICK, and Robert McKee, Defendants.

### Robert McKee, Plaintiff,

v.

### United States of America, for Denise Quick, Defendant.

No. C–3–98–338.

United States District Court,
S.D. Ohio,
Western Division.

March 15, 1999.

Paul Roderer, Paul Roderer, Jr., Dayton, OH, for Plaintiffs.

Andrew Storar, Pickrel Schaeffer & Ebeling Co. LPA, Dayton, OH, Patrick Quinn, James Greene, III, Frank Payson, Dayton, OH, for Defendants.

**DECISION AND ENTRY OVERRULING MOTION TO DISMISS (DOC. # 2) FILED BY DEFENDANT UNITED STATES OF AMERICA; PLAINTIFF ROBERT McKEE'S MOTION TO REMAND (DOC. # 8) OVERRULED; PLAINTIFF ROBERT McKEE'S MOTION TO STAY (DOC. # 19) OVERRULED, AS MOOT; RULING RESERVED ON PLAINTIFF'S MOTION FOR SANCTIONS (DOC. # 7); FURTHER PROCEDURES ORDERED OF PLAINTIFF ROBERT McKEE; CONFERENCE CALL SET.**

RICE, Chief Judge.

This consolidated action stems from Plaintiff Robert McKee's defamation and intentional infliction of emotional distress

allegations against Denise Quick, a civilian employee at Wright Patterson Air Force Base in Dayton, Ohio. McKee, who formerly worked as Quick's supervisor at Wright Patterson, initiated the present lawsuit by filing a two-count Complaint against her in the Court of Common Pleas for Greene County, Ohio. (*See* Complaint, attached to Doc.# 1). In response, Quick contacted the Allstate Insurance Company and asked the company to provide her with legal representation pursuant to her Allstate homeowner's policy. She also sought indemnification for any damages ultimately recovered by McKee. Allstate then filed an action in the Greene County Common Pleas Court, seeking a declaratory judgment concerning its obligations to Quick. Thereafter, the Greene County Common Pleas Court consolidated Allstate's declaratory judgment action with McKee's lawsuit against Quick. The United States subsequently filed a Notice of Substitution and Removal (Doc. # 1), substituting itself as the proper Defendant in McKee's action against Quick, and removing the consolidated action to this Court.

Following removal from the state common pleas court, the United States filed a Motion to Dismiss for Lack of Jurisdiction (Doc. # 2). The government's jurisdictional arguments are: (1) that McKee's claims against Quick are barred on grounds of sovereign immunity under the Federal Tort Claims Act; and (2) that the Act requires administrative exhaustion as a jurisdictional prerequisite to filing suit. *See* 28 U.S.C. § 2680(h), § 2675(a).

McKee then filed a Motion for Sanctions (Doc. # 7) against the United States, arguing that the United States improperly substituted itself as the Defendant in his lawsuit against Quick and improvidently removed the action from state court. McKee also filed a Motion to Remand (Doc. # 8) this action to the Greene County Common Pleas Court, because of the government's improper substitution as the Defendant. In a December 2, 1998, Decision and Entry (Doc. # 17), this Court stayed Allstate's declaratory judgment portion of the captioned cause, pending resolution of the merits of McKee's tort claims, or alternatively, the Court's surrender of subject matter jurisdiction, via a remand to the Greene County Common Pleas Court. Thereafter, McKee filed a Motion to Stay (Doc. # 19) the Court's ruling on the United States' Motion to Dismiss (Doc. # 2), until after it had resolved his Motion to Remand (Doc. # 8). The foregoing Motions have been fully briefed and are ripe for resolution.

I. *Motion to Dismiss (Doc. # 2) and Motion to Remand (Doc. # 8)*

 In his memoranda to the Court, McKee candidly admits that his defamation and emotional distress claims against Quick are barred by the Federal Tort Claims Act, and subject to dismissal, *if* the United States properly substituted itself as the Defendant in his lawsuit.[1] *See* Doc. # 19 at 3. On the other hand, if the United States improperly substituted itself as the Defendant in McKee's lawsuit, and improv-

---

1. "The remedy for an action in which the United States has been substituted for the employee is provided by the Federal Tort Claims Act and lies against the United States, not the individual." *Henson v. National Aeronautics and Space Administration,* 14 F.3d 1143, 1147 (6th Cir.1994). Moreover, the remedy provided by the Federal Tort Claims Act is exclusive, even though the Act excepts many torts from its coverage. *Id.* In such cases, "[t]he employee is shielded from liability even if the Federal Tort Claims Act does not provide relief." *Id.* at 1148. Notably, the Act precludes a plaintiff from recovering against the United States for defamation claims. *Id.* at 1147. Furthermore, common law tort claims brought under the Federal Tort Claims Act are subject to an administrative review procedure, and such claims are subject to dismissal if the administrative procedure is not followed. *Id.* at 1148; *see also Aversa v. United States,* 99 F.3d 1200 (1st Cir.1996) (recognizing that when a federal employee acts within the scope of his employment, defamation claims against him are properly dismissed for lack of subject matter jurisdiction, because the Federal Tort Claims Act, which provides the exclusive remedy, precludes defamation suits against the United States).

idently removed this consolidated action on that basis, then the Federal Tort Claims Act does not apply to McKee's state-law claims against Quick. Given that the Court's resolution of the Motion to Dismiss (Doc. # 2) and Motion to Remand (Doc. # 8) turns upon the propriety of the United States substituting itself as the Defendant in this action, the Court's analysis will address the two Motions together and focus upon the substitution issue.

The central issue before the Court is whether Quick acted within the scope of her federal employment when she engaged in the acts forming the factual basis for McKee's Complaint. If so, the United States properly substituted itself as the Defendant. 28 U.S.C. § 2679(d)(2). Furthermore, as noted above, McKee concedes that dismissal of his lawsuit is appropriate if the government's substitution was proper. In his Motion to Remand (Doc. # 8), however, McKee contends that his lawsuit against Quick does not stem from any acts performed within the scope of her employment at Wright Patterson Air Force Base. As a result, McKee insists that the United States improperly substituted itself as the Defendant and improvidently removed his Complaint to federal court. Conversely, the United States asserts that Quick was acting in the scope of her employment at all relevant times. (Doc. # 2 at 3–7). As a result, the United States argues that it properly substituted itself as the Defendant, that McKee's claims are barred by the Federal Tort Claims Act, and that the Court lacks subject matter jurisdiction over this litigation. (*Id.*). See *Rutkofske v. Norman*, 114 F.3d 1188, 1997 WL 299382 (6th Cir. June 4, 1997).

The Court begins its analysis of the parties' Motions with a review of 28 U.S.C. § 2679(d)(2), the relevant portion of the Federal Employees Liability Reform and Tort Compensation Act. The Act "shields federal employees from liability for common law torts committed within the scope of employment." *Henson v. National Aeronautics and Space Administration,*

14 F.3d 1143, 1147 (6th Cir.1994). Section 2679(d)(2) provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. . . .

28 U.S.C. § 2679(d)(2).

■ The Attorney General has delegated certification authority under the Act to the United States Attorneys. *See Arbour v. Jenkins*, 903 F.2d 416, 421 (6th Cir.1990), citing 28 C.F.R. § 15.3(a). Although a United States Attorney's certification constitutes *prima facie* evidence that a federal employee was acting within the scope of her employment, the certification decision does not conclusively establish as correct the United States' substitution as the defendant in place of the employee. *Mackey v. Milam*, 154 F.3d 648, 650 (6th Cir.1998); *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995). Rather, a plaintiff may raise a judicial challenge to the certification decision. *Arbour*, 903 F.2d at 421. The "scope of employment" certification is "reviewable first by the district court ... and then on the appellate level as a question of law under a *de novo* standard." *Coleman v. United States*, 91 F.3d 820, 823 (6th Cir.1996).

■ When challenging a certification decision, a plaintiff must present evidence from which a District Court reasonably

could find that the original defendant-employee acted *outside* the scope of her employment. As noted above, certification serves as *prima facie* evidence that an employee acted *within* the scope of her employment. Therefore, if the United States substitutes itself as the defendant and moves to dismiss, a plaintiff cannot defeat the motion merely by relying upon the factual allegations in his complaint. *Rutkofske v. Norman*, 114 F.3d 1188, 1997 WL 299382 (6th Cir. June 4, 1997). A plaintiff may defeat a motion to dismiss, however, by providing the District Court with evidence that raises a genuine issue of material fact on the scope-of-employment issue. *Id.* at *4. When a plaintiff produces admissible evidence controverting the government's certification decision, a District Court must conduct an evidentiary hearing in order to determine whether the United States properly substituted itself as the defendant and removed the plaintiff's lawsuit from state court. *Id.* (reasoning that an evidentiary hearing on the scope-of-employment issue is necessary only when the record contains conflicting evidence with respect to a material fact); *see also Heuton v. Anderson*, 75 F.3d 357, 361 (8th Cir.1996) (holding that

when the scope-of-employment issue is disputed, District Courts must conduct an evidentiary hearing).[2] For purposes of certification and substitution, the issue of whether a federal employee acted within the scope of her employment is governed by state law. *Woods v. McGuire*, 954 F.2d 388, 390 (6th Cir.1992). In the present case, the conduct at issue occurred at Wright Patterson Air Force Base in Dayton, Ohio. Consequently, the Court looks to Ohio law to determine whether Quick acted within the scope of her employment when she performed the acts giving rise to McKee's Complaint.[3]

■■■ Under Ohio law, an employee acts within the scope of her employment if her conduct: (1) is of the kind which she is employed to perform; (2) occurs substantially within the authorized limits of time and space; and (3) is actuated, at least in part, by a purpose to serve the employer. *Anderson v. Toeppe*, 116 Ohio App.3d 429, 436, 688 N.E.2d 538, 543 (6th Dist.1996); *see also RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir.1996) ("Under Ohio law, an employee acts within the scope of his employment if

**2.** Of course, no evidentiary hearing on the certification issue is necessary "where even if the plaintiff's assertions were true, the complaint allegations establish that the employee was acting within the scope of his/her employment." *RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1143 (6th Cir.1996). If a plaintiff "pleads conduct within an individual's scope of employment and merely alleges bad or personal motive, summary dismissal of the scope challenge is warranted." *Id.* at 1143–1144. "The scope of employment issue does not focus on the alleged wrongful nature of the employee's actions; rather, the issue is the actions complained of and whether those actions are 'so divergent that [their] very character severs the relationship of employer and employee.'" *Id.* at 1144, quoting *Osborne v. Lyles*, 63 Ohio St.3d 326, 330, 587 N.E.2d 825, 829 (1992).

**3.** Before addressing the merits of the scope-of-employment issue, the Court notes that the United States substituted itself as the Defendant and removed this action in a timely manner. In his Motion to Remand, McKee

argues that the government filed its Notice of Removal after expiration of the thirty-day period provided by 28 U.S.C. § 1446(b), which states:

"The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief ..., or within thirty days after service of summons upon the defendant if such initial pleading was filed in court and is not required to be served on the defendant, whichever period is shorter."

McKee's argument is that the United States should have filed its Notice of Substitution and Removal within thirty days after Denise Quick was served with his Complaint. The Court notes, however, that 28 U.S.C. § 2679(d)(2) expressly authorizes the United States to substitute itself as a defendant and remove an action "at any time before trial...." In light of this express authorization for the government's actions, the Court finds McKee's argument unpersuasive.

the employee acts within his authority during the course of employment even though acting intentionally or maliciously."). On the other hand, an "intentional and willful attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person, is a clear departure from employment and his principal or employer is not responsible therefore." *Byrd v. Faber,* 57 Ohio St.3d 56, 59, 565 N.E.2d 584, 587 (1991); *Henson v. NASA,* 14 F.3d 1143, 1147 (6th Cir.1994). "An employer is not liable for the independent acts of employees that in no way facilitate or promote the employer's business." *Anderson,* 688 N.E.2d at 543. Furthermore, when an employee engages in intentional tortious conduct, her behavior "must be calculated to facilitate or promote the business for which [s]he was employed or engaged." *Cooper v. Grace Baptist Church,* 81 Ohio App.3d 728, 737, 612 N.E.2d 357 362 (10th Dist.1992).

In the present case, McKee's Complaint (attached to Doc. # 1) alleges, in relevant part, that Quick "defamed the reputation and character of Plaintiff by publishing by written and/or oral communications to Plaintiff's superiors and to others allegations that Plaintiff sexually harassed her and racially discriminated against her...." (*Id.* at ¶ 6). Additionally, the Complaint alleges that Quick "further defamed the reputation and character of Plaintiff by publishing by written and/or oral communications to Plaintiff's superiors, security police, and to others[,] allegations that Plaintiff physically assaulted her." (*Id.* at ¶ 7). According to McKee, Quick's statements were false, and she intended to make, or acted recklessly concerning, her defamatory remarks. (*Id.* at ¶ 8, 10). McKee also alleges that Quick's "defamatory conduct and statements and allegations have been widely published to supervisors of the Plaintiff, to the security police, to co-workers, and to others." (*Id.*

at ¶ 9). As a result, McKee alleges that he "has suffered injury to his professional reputation, humiliation, and emotional distress, loss of job and lost wages and benefits." (*Id.* at ¶ 11). The foregoing allegations, which underlie McKee's defamation claim, also form the factual predicate for his intentional infliction of emotional distress claim against Quick. (*Id.* at ¶ 11–15).

In its Motion to Dismiss (Doc. # 2), the United States argues that McKee's factual allegations all relate to Quick filing an informal, administrative complaint against him with Wright Patterson officials. Specifically, the government alleges that Quick's remarks about McKee "were made as part of a discrimination complaint lodged with the appropriate authorities at Wright Patterson" under Title VII. (*Id.* at 3).[4] The government insists that "no publication of the allegations was made outside the [administrative] process." (*Id.*). In support of this claim, Quick has provided the Court with a declaration, under the penalty of perjury, in which she states, in relevant part: "I filed an informal grievance pursuant to Title VII of the Civil Rights Act of 1964.... I did not publicize my complaints outside of that Title VII process.... All of the actions I took which form the basis of Mr. McKee's complaint ... occurred incident to my service as a Department of the Air Force Civilian employee." (Declaration, attached to Doc. # 2). As noted above, the United States Attorney also has certified that Quick acted within the scope of her employment at all relevant times. (Certification, attached to Doc. # 1).

The United States frames the legal issue before the Court as "whether remarks made b[y] federal employees engaged in exercising their equal employment protections[ ] can constitute slander which is beyond the protections of the [s]cope of employment test...." (*Id.*). Arguing that

---

4. The government's various memoranda fail to recognize that McKee's Complaint also alleges defamation arising from Quick's filing an allegedly false assault report against him and repeating her purportedly baseless allegations to others. *See* Complaint (attached to Doc. # 1 at ¶ 7, 9).

such remarks do not fall outside an employee's scope of employment, the government relies upon *Woods v. McGuire*, 954 F.2d 388 (6th Cir.1992). In particular, the United States stresses the Sixth Circuit's recognition in *Wood* that a Postal Service Medical Officer acted within the scope of his employment when he made false allegations about the plaintiff to the plaintiff's treating psychologist. *Id.* at 389–390. Regardless of the Medical Officer's motivation, the court concluded that his remarks arose out of his duties with the Postal Service. *Id.* at 390. This Court also notes that the Sixth Circuit has found the filing of an internal grievance or an administrative complaint generally within the scope of a federal employee's employment. *Coleman v. United States*, 91 F.3d 820, 824 (6th Cir.1996); *see also Taboas v. Mlynczak*, 149 F.3d 576, 582 (7th Cir.1998).

Neither *Woods* nor *Coleman* forecloses the possibility, however, that a federal employee may make defamatory remarks which exceed the scope of her employment. In *Woods*, the Sixth Circuit merely recognized that a Medical Officer acts within the scope of his employment when he conveys information to an individual's treating psychologist. Furthermore, in *Coleman*, the court noted that filing internal grievances or reporting disruptive behavior to supervisors falls within the scope of an individual's employment. In the present case, however, McKee insists that his defamation allegations against Quick stem from defamatory comments that she made to co-workers *outside* of the administrative complaint process, and *not* from allegations made in connection with her Title VII administrative complaint, or her formal assault complaint.

In support of his assertion that Quick made such remarks outside of the administrative process, McKee has provided the Court with a copy of Quick's answers to his requests for admissions. In her response, Quick admits telling co-workers that McKee discriminated against her because of her race and/or gender. (*Id.* at Exh. E, admission # 10). In addition, McKee has submitted an affidavit from Francis Finneron, a retired Wright Patterson employee who formerly worked with McKee and Quick. (*Id.* at Exh. F). Finneron avers, in relevant part, that she is aware of Quick's allegations against McKee "because she has spread this around the NAIC building, and everyone there at this point knows about it. I did not receive this information from Robert McKee." (*Id.* at ¶ 9). Furthermore, McKee has provided the Court with excerpts from a deposition of Michelle Scott, who is a co-worker and friend of Quick's. (*Id.* at Exh. G). Scott testified that Quick discussed the assault allegation against McKee after making the charge. (*Id.* at 72).[5]

Without question, the foregoing evidence controverts Quick's averment that she did not repeat her various allegations against McKee outside of Wright Patterson's administrative complaint process. The critical issue, however, is whether such remarks to co-workers and friends would fall outside the scope of Quick's employment, assuming *arguendo* that she made them. After reviewing relevant Ohio law, the Court concludes that Quick's allegedly defamatory remarks to co-workers likely would exceed the scope of her federal employment.

In *Trader v. People Working Cooperatively, Inc.*, 104 Ohio App.3d 690, 663

5. McKee has provided the Court with an unauthenticated copy of Quick's answers to his Request for Admissions. He also has provided unauthenticated excerpts from Scott's deposition. Such unauthenticated evidence may not be considered by the Court when ruling upon the parties' Motions. Because the Court finds this unauthenticated evidence relevant to its analysis, however, it hereby directs McKee to authenticate Quick's answers and Scott's deposition excerpt *within seven days*. If McKee fails to provide the Court with an affidavit authenticating these documents, the Court will vacate its judgment and reconsider its ruling herein *without* relying on this unauthenticated evidence.

N.E.2d 335 (1st Dist.1994), the appellate court recognized that an employee's defamatory comments at work about another employee may fall outside the scope of employment, thereby not subjecting the employer to liability under *respondeat superior* principles.[6] *Id.* at 340. Likewise, in *Cooper,* 612 N.E.2d at 362–363, the Franklin County Court of Appeals reasoned that a church pastor acted outside the scope of his employment when he made disparaging remarks about a church member. Kristol Cooper, a member of the congregation, had contacted the Ohio Attorney General's office after unsuccessfully attempting to obtain copies of the church's by-laws and constitution. *Id.* at 359. The Attorney General's office conducted an investigation and spoke with the church's pastor about providing the by-laws and constitution. *Id.* at 359–360. During a telephone conversation with the state investigator, the pastor remarked that Cooper should be prosecuted for misappropriating church funds. *Id.* at 360. Cooper subsequently filed suit against the church and its minister, alleging defamation. Upon review, the Tenth District Court of Appeals concluded that the pastor's derogatory comment fell outside the scope of his employment, reasoning:

> "Certainly, it was within Calloway's scope of employment as a pastor to respond to the Attorney General's investigation relative to the production of the church's by-laws and constitution. On those matters, Calloway had authority to communicate with McClain. However, during the course of that conversation on those legal matters, it was not necessary for Calloway to inject his personal opinions as to plaintiff's alleged misconduct."

> "At trial, plaintiff did not introduce any evidence that Calloway's gratuitous rendering of his personal evaluation of plaintiff's alleged prior conduct in any way facilitated the church's functions.

During his case-in-chief, plaintiff failed to demonstrate that it was within Calloway's scope of employment, or duties as a minister, to publicly render personal opinions about members of the congregation. No evidence was offered by the plaintiff that Calloway was authorized by the church to make such statements, nor was there evidence before the trial court that the church ratified Calloway's conduct after the fact.... The alleged defamatory remarks attributed to Calloway had nothing whatsoever to do with responding to McClain's official inquiry...."

*Id.* at 363.

In two other cases, Ohio appellate courts have concluded that an employee's statements to co-workers fell outside the scope of employment. Notably, the first case, *Lamson v. Firestone Tire and Rubber Co.,* No. 14692, 1991 WL 35098 (9th Dist. March 13, 1991), involves facts strikingly similar to the present case. In *Lamson,* the plaintiff filed suit against Firestone Tire and Rubber Company, his former employer, after being terminated for sexually harassing a co-worker. The plaintiff's termination resulted from an investigation that the employer had conducted after receiving a sexual harassment complaint about the plaintiff from a female co-worker. After being terminated, the plaintiff filed a lawsuit against Firestone alleging, *inter alia,* defamation and intentional infliction of emotional distress. In support of his defamation claim, the plaintiff sought to hold Firestone liable for allegedly defamatory comments that the female co-worker had made to fellow employees about his sexual harassment. Finding the victim's remarks outside the scope of her employment, the Ninth District Court of Appeals reasoned:

> "In his claim for defamation, Perry argues that Chandler's allegedly defam-

**6.** In *Trader,* the plaintiff's co-workers allegedly defamed him by stating that he had threatened to shoot someone. *Trader,* 663 N.E.2d

at 340. The appellate court found no evidence suggesting that these comments were made within the scope of employment. *Id.*

atory statements were 'published' by Chandler within the course of her employment when, prior to appellees' investigation, she told fellow employees of Perry's harassment. Appellant proceeded on a theory of respondeat superior to hold Firestone liable for Chandler's statements."

"Perry's theory of recovery fails in two respects. First, under respondeat superior, the test of Firestone's liability for Chandler's allegedly defamatory statements is not simply whether Chandler was in Firestone's employ, but whether the statements were made in the furtherance of Firestone's business and under the general direction of Firestone. *See, Halkias v. Wilkoff Co.* (1943), 141 Ohio St. 139, 152, 153, 47 N.E.2d 199. Perry has failed to set forth specific facts showing that Chandler's statements to her co-workers were made in furtherance of Firestone's business."

"Second, the general rule in Ohio is that an employer is not liable for an employee's intentional, malicious torts performed outside the scope of employment. *Taylor v. Doctors Hospital* (1985), 21 Ohio App.3d 154, 156, 486 N.E.2d 1249. *Perry failed to set forth specific facts demonstrating how Chandler's statements to co-workers regarding sexual harassment by Perry fell within the scope of Chandler's employment as a secretary.* The trial court properly granted summary judgment to the appellees on this claim."

*Id.* at *3 (Emphasis added).

Finally, in *Corradi v. Emmco Corp.*, No. 67407, 1996 WL 65822 (8th Dist. Feb. 15, 1996), the Eighth District Court of Appeals found that an employee acted outside the scope of her employment when she made allegedly defamatory remarks about a former co-worker. In 1991, plaintiff Rebecca Corradi was fired from her job as the property manager of an apartment complex. Following her termination, Irene Soltis, a former co-worker, informed visitors to the rental office that Corradi had been fired for taking money from petty cash. Soltis also informed a mutual friend that Corradi had been discharged for removing carpeting and appliances from the apartments. Finding these comments outside the scope of Soltis' employment, the Eighth District Court of Appeals reasoned:

"In this case, Soltis was employed by EMMCO and assumed some of the responsibilities of Corradi after Corradi was discharged. Her responsibilities did not include providing information regarding the reasons for Corradi's discharge from EMMCO and there is no evidence that her remarks tended to 'facilitate or promote' EMMCO's business.... Accordingly, Soltis was acting outside the scope of her employment, and therefore, the trial court properly directed a verdict in favor of EMMCO."

*Id.* at *3.

After reviewing the foregoing case law, the Court concludes that McKee has raised a genuine issue of material fact about whether Quick acted within the scope of her employment at all relevant times. As set forth, *supra*, Quick appears to have acted within the scope of her employment when she utilized Wright Patterson's administrative complaint process to report McKee's alleged racial and sexual harassment.[7] She also may have acted within the scope of her employment when she reported McKee's alleged assault to Wright Patterson security police. Therefore, to the extent that Quick conveyed her various allegations to her superiors, to Wright Patterson security personnel, or to investigators, the comments very well might fall within the scope of her federal employment.

---

7. As noted, *supra,* the Sixth Circuit generally has found an employee's internal grievances or complaints about fellow workers to fall within the scope of employment. *Coleman,* 91 F.3d at 824.

Given the record before it, however, the Court cannot conclusively determine that Quick's harassment and assault complaints were made within the scope of her employment. Applying Kentucky law, the Sixth Circuit in *Rutkofske,* 1997 WL at 299382 *2, recognized that when an employee maliciously files a false complaint *purely* for personal gain, such conduct exceeds the scope of employment, and the government may not be substituted as the defendant. In reaching this conclusion, the *Rutkofske* court also looked to the legislative history behind the Westfall Act. That legislative history states: "If an employee is accused of egregious misconduct, rather than mere negligence or poor judgment, then the United States may not be substituted as the defendant, and the individual employee remains liable." H.R.Rep. No. 100–700, at 5, 100th Cong. (1988), reprinted in 1988 U.S.C.A.A.N. 5945, 5949 (1988). In light of this legislative history, the Sixth Circuit reasoned that "[t]he Act is intended to shield federal workers from suits which arise out of their performance of their official duties, not to give them license to commit intentional torts at the office." *Rutofske,* 1997 WL 299382 at *2 n. 1.

Under Ohio law, the Sixth Circuit has recognized that intentional and malicious conduct by an employee does not necessarily preclude the wrongful actions from coming within the scope of employment. *Henson,* 14 F.3d at 1147. Such actions *do* exceed the scope of an employee's employment, however, if the acts are self-serving and in *no way* facilitate or promote the employer's business. The *Henson* court recognized that under Ohio law, the scope of employment does not include intentional and willful acts committed by an employee purely "to vent his own spleen or malevolence against the injured person." *Id.*

In light of the foregoing case law, the Court cannot *definitively* say that Quick's Title VII administrative complaint and her physical assault report against McKee fell within the scope of her employment. As noted, *supra,* an employee's internal complaints about inappropriate behavior generally come within the scope of employment. *Coleman,* 91 F.3d at 824; *Taboas,* 149 F.3d at 582. As the Sixth Circuit has recognized, however, maliciously false complaints made *purely* for personal gain exceed the scope of a federal employee's employment. *Rutofske,* 1997 WL 299382 at *2. The Sixth Circuit's reasoning in *Rutkofske* is consistent with Ohio law. *See Woods v. McGuire,* 954 F.2d 388, 390 (6th Cir.1992) (citing Ohio law for the proposition that "an intentional or willful attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person" falls outside the scope of employment).

■■■ In the present case, McKee has presented affidavit testimony from several co-workers, stating that Quick's various allegations are false, and that Quick has a reputation for, and habit of, making such baseless allegations as a means of intimidating her supervisors and advancing her government career. (*See* Doc. # 8 at Exh. F, I, L, M, N, O). In fact, McKee has provided the Court with a excerpt from Quick's deposition testimony, in which she appears to admit the falsity of her assault charge. (*Id.,* Exh. H at 114, 139). This evidence raises a genuine issue of material fact about whether even Quick's informal, administrative Title VII complaint and her assault charge were made for purely personal gain or in part to further her employer's interests. Given the evidence before it, the Court simply cannot say that Sixth Circuit and Ohio precedent foreclose the *possibility* that Quick's Title VII and/or assault complaints might fall outside the scope of her employment. Therefore, McKee is entitled to present evidence on the issue at an evidentiary hearing. The Court notes once again, however, that Quick's deposition excerpt has not been authenticated for the Court's consideration. Consequently, *McKee is granted seven days to file an affidavit authenticating the excerpt.* His failure to do so will result in the Court vacating its judgment

and reconsidering this ruling without consideration of Quick's deposition testimony.

Finally, to the extent that Quick made allegedly defamatory remarks about McKee to co-workers, the Court has serious doubts about whether those comments were made within the scope of her employment. In its memoranda filed with the Court, the United States has flatly denied McKee's claim that Quick repeated her allegedly defamatory remarks outside of Wright Patterson's administrative complaint process. Consequently, the government has cited no evidence suggesting that such remarks, if they were in fact made, fell within the scope of Quick's federal employment. The Court's independent review of the record likewise reveals no evidence suggesting that Quick's gratuitous and allegedly defamatory remarks to co-workers and friends facilitated Wright Patterson's internal investigation. The United States simply advances no argument explaining how Quick's remarks to co-workers regarding McKee's actions fell within the scope of her federal employment. In any event, McKee has presented sufficient evidence to raise a genuine issue of material fact on the scope-of-employment issue, with regard to the defamatory comments, and to warrant an evidentiary hearing thereon.

If the Court determines, after conducting such a hearing, that Quick acted outside the scope of her employment, then the Court will reject the government's certification and substitute Quick as the proper Defendant in place of the United States. On the other hand, if the Court determines that Quick acted within the scope of her employment at all relevant times, then McKee's claims will be dismissed for lack of jurisdiction, because the Federal Tort Claims Act precludes recovery, and because McKee has failed to follow the mandatory administrative review process set forth in the Act. Given the presence of a genuine issue of material fact, and the corresponding need for an evidentiary hearing, however, the Court cannot sustain

McKee's Motion to Remand (Doc. # 8) or the United States' Motion to Dismiss (Doc. # 2). Without first conducting an evidentiary hearing on the scope-of-employment issue, the Court finds itself unable to determine whether the United States properly substituted itself as a Defendant in this matter. Accordingly, the United States' Motion to Dismiss (Doc. # 2) will be overruled, and McKee's Motion to Remand (Doc. # 8) will be overruled. The Court will revisit the issues of dismissal and remand after conducting an evidentiary hearing to determine if Quick made the various comments alleged in McKee's Complaint, and if so, whether she made the remarks in the scope of her employment.

### II. *Motion to Stay* (Doc. # 19)

Also pending before the Court is a Motion to Stay (Doc. # 19) filed by Plaintiff Robert McKee. In his Motion, McKee seeks an Order staying any ruling on the United States' Motion to Dismiss (Doc. # 2), until after the Court issues a ruling on his Motion to Remand (Doc. # 8). In support, McKee reasons that a remand to the state court would render the United States' Motion to Dismiss moot. Furthermore, McKee admits that his claims are barred by the Federal Tort Claims Act, and his Complaint is subject to dismissal, if the United States properly substituted itself as the Defendant in this lawsuit. Given the Court's determination, *supra,* that it cannot sustain the Motion to Dismiss (Doc. # 2) or the Motion to Remand (Doc. # 8), the Court hereby overrules McKee's Motion to Stay (Doc. # 19), as moot.

### III. *Motion for Sanctions (Doc. # 7)*

Also pending before the Court is a Motion for Sanctions (Doc. # 7) filed by Plaintiff Robert McKee. In his Motion, McKee seeks sanctions against the United States for improperly substituting itself as a Defendant and removing his lawsuit from state court. The Court will reserve a rul-

ing on McKee's Motion for Sanctions, however, until after conducting an evidentiary hearing and resolving the disputed scope-of-employment issue.

## IV. *Conclusion*

In light of the foregoing analysis, the Court hereby OVERRULES the Motion to Dismiss (Doc. #2) filed by Defendant United States of America. Plaintiff Robert McKee's Motion to Remand (Doc. #8) is OVERRULED. Plaintiff McKee's Motion to Stay a ruling on the United States' Motion to Dismiss (Doc. #19) is OVERRULED, as MOOT. The Court will reserve its ruling on Plaintiff McKee's Motion for Sanctions (Doc. #7), until after conducting an evidentiary hearing on the scope-of-employment issue. Plaintiff Robert McKee is granted seven days to file an affidavit authenticating the documents identified herein.

The parties will take note that a telephone conference call has been set for Tuesday, March 30, 1999, at 8:30 a.m. to establish an evidentiary hearing date on the scope-of-employment issue.